1836.

Reed
v.
Warner.

---

### REED *vs.* WARNER and others.

Where R., who had failed in business, employed W. to compromise with his creditors, and authorized him to offer fifty cents on the dollar upon such compromise, and W., while acting as such agent, purchased several notes of R. at that rate, upon his own account, and afterwards sold such notes to J. and H. for the whole nominal amount, after they became due ; *Held*, that J. and H. could not be permitted to recover more than fifty per cent. upon the amount of such notes; *Held* also, that W. was a proper party to a bill in chancery filed by R. against J. and H. to stay the proceedings at law on such notes upon the payment of what was equitably due thereon as between R. and W.

An agent who is employed to purchase an estate, or to transact any particular business for another, cannot purchase the estate for himself, or act for his own benefit in relation to the subject matter of such agency, to the injury of the person by whom he is employed.

Where an answer on oath is not waived by the complainant, in his bill, and there is no jurat to the copy of the answer served, if the complainant files a replication and goes to a hearing without objection, the irregularity is waived ; and he cannot at the hearing deprive the defendant of the benefit

of the answer, so far as it is responsive to the bill, by objecting to the want of a jurat to the copy of the answer as served.

THE complainant, who was a jeweller residing in the city of New-York, in the spring of 1829, gave to Davis, Babbitt & Co., of Providence, three negotiable promissory notes, amounting together to the sum of $700,34, payable at different times, the last of which notes became due on the 28th of March, 1830. Previous to the time when any of the notes became payable, the complainant stopped payment. He made propositions to his various creditors to compromise, and offered to pay them fifty per cent. on the amount of their debts; which terms Davis, Babbitt & Co. were willing to accept, if other creditors would consent to compromise in the same way. About the middle of April, 1830, these notes were transferred to the defendant Warner, upon a purchase of real estate, but without recourse to Davis, Babbitt & Co. as endorsers. It appeared by the proofs in the cause, that Dr. Richmond had some interest in the real estate conveyed by Warner, and thus became interested in the purchase of the notes; but it did not appear what was considered by either party as the fair cash value of the notes, upon the sale and purchase of the real estate. On the 23d of April, 1830, Warner gave to the complainant a written memorandum, reciting that he was the holder of the three notes, which he promised and agreed to give up to Reed, upon his paying $350, and interest from that time, provided Reed paid the same within two months from that date. This amount was not paid by Reed at the time specified in the memorandum. Warner again went to New-York, in August, 1830, where an interview took place between him and Reed. At this interview Reed offered to pay him the $350, and interest, for the notes, about $107 thereof in the note of a third person, and the residue in cash; which sum Warner refused to receive unless Reed would also pay him $100 in addition, as a compensation for his services in negoiating for him with his Providence creditors and to remunerate him for his passages backward and forward, and for other expenses. The complainant offered him a watch, or $50, as a compensation for such services

and expenses; which offer was declined, and the negotiation was thereupon broken off, Warner being then about to start for Providence in the steam boat. Warner afterwards sold the notes to the defendant Johnson, for $400 in cash and $226 in goods, without endorsing the notes; and he took from Johnson a written stipulation exonerating Davis, Babbitt & Co., whose names were on the back of the notes as endorsers. One of the notes, for $250, was subsequently transferred by Johnson to the defendant Harris, to be collected and applied by him in part payment of an antecedent debt. Harris afterwards brought a suit in the supreme court upon the note transferred to him; and Johnson brought two suits upon the other notes, one in the supreme court, and the other in the mayor's court in the city of New-York. The complainant thereupon filed his bill in this cause, for an injunction to stay the proceedings in the suits at law, and to have the notes delivered up and cancelled upon the payment of $350 and interest thereon from the date of the agreement or memorandum, of April 23d, 1830. The complainant alleged in his bill, among other things which are not material to be stated here, that previous to the transfer of the notes to Warner, by Davis, Babbitt & Co., he had employed Warner as his agent to effect a compromise with all his Providence creditors, and had agreed to pay him a reasonable compensation for his services, and that Warner purchased the notes at the rate of fifty cents on the dollar of the amount due thereon. But the defendant Warner, in his answer, although he admitted that he was requested by the complainant to ascertain the views of the creditors in relation to their demands against him and to inform him upon what terms he thought they could be arranged, expressly denied that he was ever employed or applied to, at any time before the purchase of these notes, to negotiate with Davis, Babbitt & Co., or with any other of the Providence creditors, in relation to any claims against the complainant; or that he ever agreed with Reed to settle with the holders of these notes for a less sum than their nominal amount, if practicable, or in any other manner. The other defendants also denied this allegation in the bill, upon their information de-

rived from Warner. The cause was heard upon pleadings and proofs as to all the defendants.

*James King*, for the complainant.

*S. Dutcher*, for the defendants.

THE CHANCELLOR. Before proceeding to examine the merits of this cause, it is proper to notice one or two objections that were made upon the argument, which relate to matters of form. On the part of the defendant Warner it was insisted that there was no equity in the bill which could authorize the complainant to make him a party; and that he was a mere witness. This objection is untenable, if the allegation in the bill is true, that Warner, at the time of the purchase of the notes, was the agent of the complainant to obtain a compromise of his Providence debts at an amount not exceeding fifty cents on the dollar. If such was the fact, the transfer of the notes to Johnson, for the whole nominal amount thereof, was a fraud upon the rights of the complainant, which would have authorized him to file a bill in this court to compel the defendant Warner to indemnify him against the payment of any more of the notes than was equitably due, as between him and Warner, at the time of the transfer of the notes to Johnson. And as the notes were transferred to Johnson and Harris after they became due, and therefore subject to all equities which existed against such notes in the hands of Warner, the complainant had a right to join them with Warner, as defendants in the suit, for the purpose of having the account of what was due ascertained, to prevent a recovery at law for any more than was justly due. (*See Baily* v. *Inglee*, 2 *Paige's Rep.* 278. Again; it appears, from the answer of the defendant Johnson, that Warner sold and transferred the notes to him as being justly due to the extent of the full nominal amount thereof. And that he gave to Johnson no information as to the existence of the agreement of the 23d of April, 1830, or that any equitable claim existed to prevent the recovery of the full amount of the notes, with interest. This being the fact,

the defendants Johnson and Harris would probably have had the right to insist that Warner should be made a party, to assist them in the defence of the suit, and that he might be primarily charged with the costs, if the complainant succeeded; and also that they might have a decree over against him, for so much of the nominal amount of the notes as was not equitably due from Reed at the time they were sold to Johnson.

The copy of the answer of Warner which was served on the complainant's solicitor, has no jurat attached to it; and it is objected that, for this reason, it is to have no greater effect, as evidence, even where it is responsive to the bill, than if an answer on oath had been waived by the complainant, under the provision of the revised statutes on that subject. (*2 R. S.* 175, § 44.) This is probably a mere slip of the defendant's solicitor, as I presume the original answer on file was duly sworn to, in the usual manner. The 40th rule makes it the duty of the complainant, if he wishes to waive an answer on oath, so as to obtain the benefit of this provision of the revised statutes, to insert such waiver in his bill. And where he has a right to an answer on oath, and neglects to insert such a waiver in his bill, he ought not to be permitted to take advantage of a technical objection of this kind, to deprive the defendant of the benefit of such parts of the answer as are responsive to the bill. If, from the copy served, the answer did not appear to have been properly verified, the complainant's solicitor should have refused to receive it, or he should have returned it to the defendant's solicitor, as soon as the mistake was discovered, and proceeded as if no answer had been put in. But by filing a replication and proceeding to a hearing upon pleadings and proofs, the irregularity of serving an answer to which no jurat was attached, was waived.

The answer of the defendant Warner is in direct collision with the testimony of W. H. Priest, one of the complainant's witnesses, as to the fact of Warner's having assumed to act as the agent of Reed, in compromising with his Providence creditors, previous to the purchase of these notes; and the letters of Warner, before and after the transfer of the notes of Davis, Babbitt & &o. to him, strongly corroborate the testimony of Priest, in this respect. There is some little doubt as to the

1836.

Reed
v.
Warner.

time when the notes were actually sold to Warner, in exchange for the land. Warner, in his answer, says he thinks it was about the last of March. But Davis and Babbitt, both of whom were examined as witnesses, in one of the suits at law, and whose testimony was read in this cause, by agreement of the parties, swear that the bargain for the transfer of the notes was closed about the 13th of April. This difference in time, however, is not very material, as none of the letters to the complainant are dated between the 16th of March and the time of the arrangement between him and Warner, at New-York, when the latter agreed to accept $350, in full for the notes. Priest swears that sometime in the latter part of the winter of 1829, '30, he thinks in the month of February, Warner was at New-York, and had an interview with Reed, at the store of the latter; that Reed requested Warner to assist him in compromising with his Providence creditors, and told him he would compensate him for his services, and pay all the expenses which he, Warner, might be put to, in the business; that Warner replied that he had no objection to do what he could for the complainant, but that it would be useless for him to stir in the business, unless Reed was prepared to pay fifty cents on the dollar, as he was confident the creditors would take no less; that after some farther conversation, the complainant authorized Warner to settle with the creditors on those terms, if he could not do better, but requested him to settle on the best terms he could, and to get as long a time for the payment of the fifty cents on the dollar as possible; and that Warner then said he would do what he could for him, and would let him know the result as soon as possible.

The first letter of Warner to the complainant, after the interview testified to by Priest, is dated at Providence, on the 16th of March, 1830. In this letter Warner says, " I have made some inquiry respecting your business, and think, from what I can discover, that you will find some difficulty in settling at fifty cents on the dollar, cash down. Patten says he will have seventy-five. Mr. Frost says the same. I will look about and ascertain what others will do, and will write you soon. I should recommend you to settle with Mumford, if possible." Again, upon the 28th of April, he writes to Reed,

and says, among other things: "I have this day seen Mr. Mumford, respecting your business. I saw Mr. Jenks yesterday. It will be necessary for Mr. Jenks to have his money by the 12th of May. Mr. Mumford says, in conversation I had with him, that he expects to get the whole of his demand against you, as you have nearly settled all your business. *He does not know that I was authorized to offer any terms from you.*" These two letters, and the subsequent claim which Warner made upon Reed for compensation for his services in endeavoring to make a settlement with the Providence creditors, in connection with the positive testimony of Priest, satisfy me that it is true, as alleged in the bill, that Warner had assumed to act as the agent of Reed in effecting a compromise with his Providence creditors, previous to the purchase of the notes of Davis, Babbitt & Co., notwithstanding the denial in the answer. He therefore had no right, while that relationship continued, to purchase and hold those notes for a greater sum than he actually paid, not exceeding fifty cents on the dollar and a reasonable compensation for his services. And although it was a breach of good faith, on the part of Reed, not to pay the $350 and interest within the time given him for that purpose by the memorandum of the 23d of April, that did not authorize Warner to hold the notes for their full amount, or to demand any thing more than a reasonable compensation for his services as agent. It is a well settled principle of equity that an agent employed to purchase an estate, or to transact any particular business for another, cannot purchase for himself, or act for his own benefit in relation to the subject matter of the agency, to the injury of his principal. (*See Lees* v. *Nuttall, Taml. Rep.* 282 ; 2 *Myln. & Keen,* 819, *S. C. ; Parkist* v. *Alexander,* 1 *John. Ch. Rep.* 394.) The amount offered by the complainant, in August, 1830, including the $50 for his services as agent, which probably was more than those services were actually worth, was as much as Warner had any equitable right to claim. And if that amount had been actually tendered in money, instead of being in part offered in the note of a third person, I should hold the complainant discharged from the payment of interest af

ter that date, or any of the costs of the suits at law upon the notes.

As the notes were transferred to Johnson, after they became due, and under circumstances sufficient to put him on inquiry, as to the equities existing between the maker and the holder of the notes, Johnson cannot be permitted to hold them for any thing more than the two sums offered by Reed, in August, 1830, with interest from the 13th of that month; which, from the casting on exhibit No. 11, appears to be the day on which that offer was made. The complainant is not wholly without fault in this business, as he should have paid the amount of the two smallest notes, and tendered sufficient upon the other to make up the $406,45 and interest, from August 13th, 1830. In that case the costs of the suits upon the two smaller notes would have been saved. He must, therefore, pay the whole amount of those two notes, and the costs of the suits thereon; and so much of the larger note as will, with the principal and interest of the two smallest, make up the $406,45 and interest. And upon the payment of that amount, the defendants must be perpetually enjoined from proceeding in the suit upon the larger note, and the same must be deposited with the register and cancelled.

The defendants Harris and Johnson appear to have acted in good faith, and I shall not charge them with the costs of the complainant in this suit; but he is entitled to recover his costs as against the defendant Warner. As the defendants have all appeared by one solicitor, and the cause was argued by the same counsel, on the hearing, it would be improper for me, at this time, to undertake to settle their rights between themselves, although it is probable that sufficient appears upon the pleadings and proofs to enable me to make such a decree as would be equitable in that respect. I shall therefore reserve the questions which arise between the defendants themselves, and give permission to any or either of them hereafter to apply for such further directions in this respect as may be just.