BENJAMIN ALBERTSON, appellant,

*v.*

LIZZIE FELLOWS, respondent.

One who undertakes to settle a debt for another cannot purchase it on his own account.

On appeal from a decree of the court of chancery advised by *Washington B. Williams, Esq.,* advisory master.

*Mr. David Harvey, Jr.,* and *Mr. Frank P. McDermott,* for the appellant.

*Mr. Charles D. Thompson,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

On the 15th day of December, 1887, Jerome B. Fellows exhibited in the court of chancery two bills of complaint against Benjamin Albertson, the appellant—one to foreclose a mortgage for $2,500, made by Albertson on lands in this State, the other to foreclose a like mortgage for $1,500. Both mortgages were made to Alphonso W. Hager, and are held by the complainant as assignee of the original mortgagee. By virtue of orders duly made in each cause, the two suits have been consolidated, and Lizzie Fellows, the respondent, has been substituted in the place of Jerome B. Fellows. Albertson has filed, in each case, an answer by way of cross-bill, and resists the collection of the mortgages upon several grounds.

He says, in the first place, that the mortgages were procured from him by misrepresentation and fraud, and were without consideration.

The history of the transaction in the course of which these mortgages were given is as follows:

Early in the year 1886, the Currey & Hager Evener Spring Company was organized at Asbury Park, and incorporated under the General Corporation act of this state. The object of the company was to manufacture a patented spring for heavy wagons, known as the Evener spring, and to sell such springs in the States of New Jersey, Maryland and Delaware.

The promoter of the enterprise was Alphonso W. Hager, one of the owners of the patent, and upon the organization of the company he sold to it the right to manufacture and sell, as above indicated. The new company consisted of three individuals, Albertson being one of the three. The price paid Hager was $15,000, or $5,000 each. The other two incorporators each

paid Hager $5,000 in cash; Albertson paid $1,000 in cash, and to secure the remaining $4,000 made the two mortgages in question.

The contention of Albertson now is, that, inasmuch as some of Hager's representations as to the extent to which the springs were in actual use, if not absolutely false, were at least gross exaggerations, he parted with his money and his mortgages without due consideration, and that they are null and void, even in the hands of complainant, a third party. He also seeks to reach the same result because of a breach by Hager of his agreement to furnish the springs to the new company at a certain price when needed to fill orders.

Insuperable difficulties, however, present themselves in the way of such a conclusion. The conduct of Albertson in respect to the transaction after he was in a position to know of the fraud which he now sets up, and the intervention of a third party who, during the mortgagor's period of acquiescence, has parted with a valuable consideration for the mortgages, militate against such a result, even if the proofs of the fraud itself were as clear as the defendant would have us deem them. The breach also by Hager of his contract to furnish the springs, while it may afford a basis for an action at law, is certainly no defence to the mortgages.

If the decree of foreclosure rendered below is to be disturbed, it must be upon other grounds than these.

But it is suggested by the appellant that ample ground for such a conclusion is afforded by the conduct of the complainant himself in reference to these mortgages, granting that they were unimpeachable at their inception.

This line of defence necessitates an examination of Fellows's connection with the transfer of these mortgages to himself.

It appears that in December, 1886, and while Hager and his partner, Currey, were still the holders of Albertson's mortgages, they bought some furs from Fellows for $1,075. They paid on this purchase $175, in cash, Fellows retaining the furs until the remaining sum of $900 should be forthcoming. Immediately after this transaction the two mortgages against Albertson were

Albertson v. Fellows.

delivered by Currey & Hager to Fellows, with an oral authoriza-tion to enforce their payment by suit against Albertson, out of the proceeds of which Fellows was to retain his $900 and ex-penses. A short time after this, and at the suggestion of Fel-lows, a written assignment of these mortgages to himself was prepared and submitted to Hager, together with a promissory note for the indebtedness of $900, with the request that he sign them. These papers Hager refused to have executed, whereupon Fellows, still retaining possession of the mortgages, brought suit against Curry & Hager for the balance due him on the furs and recovered a judgment, including interest and costs, of upwards of $1,400. While matters were in this shape, Fellows, with the view of obtaining from Currey & Hager the amount due on his judgment against them, sought out Albertson, and repre-senting to him that his mortgages could be purchased from Cur-rey & Hager at much less than their face, undertook, in his behalf, to get them at the lowest figure he could. Fellows con-tinued in this line of negotiation until, finally, on the 2d day of September, 1887, he obtained from Currey & Hager what he called an "option." This was in effect an agreement that if Albertson, on or before three P. M. of September the 7th, should pay to Currey & Hager, or their order, a sum not over $1,500 nor less than $1,400, they would deliver to him his said bonds and mortgages for cancellation. On September 6th, the day before the time of payment fixed in said agreement, Albertson left in Fellows's hands the sum of $440 in cash and received from Fellows a receipt therefor in the following language:

"NEW YORK, Sept. 6, 1887. ·

"Received from Benjamin Albertson, Esq., the sum of four hundred and forty dollars, to be used in the matter of said Albertson's business with Alphonso W. Hager, and if not used in said business on Sept. 7, 1887, the same to be returned to said Albertson on the 8th day of September, 1887.

"J. B. FELLOWS."

On September the 7th, by three o'clock, Albertson had not paid any further money on his said option, and on the same day, at half-past three, Fellows took from Currey & Hager an assign-ment of the two mortgages to himself, absolute on its face, in

consideration of the sum of $1,438.20, the exact amount due him by Currey & Hager on his judgment against them, which he thereupon satisfied of record.

It is by virtue of this assignment thus obtained that Fellows claims the right to enforce as against Albertson, and for their full amount, these mortgages, which claim, excepting in so far as it may be reduced by the application to the mortgage debt of the $440 which Fellows had never repaid to Albertson, the decree below recognizes and proposes to enforce.

Upon familiar principles, and on the authority of innumerable decisions in this State and elsewhere, if, in the transaction above detailed, Fellows was acting for Albertson, he can, as against Albertson, obtain no such advantage by his bargain. Nothing is clearer than that one who undertakes to settle a debt for another cannot purchase it on his own account. *Wright* v. *Smith, 8 C. E. Gr. 106; Thalman* v. *Canon, 9 C. E. Gr. 127; Dodd* v. *Wakeman, 11 C. E. Gr. 484; Vreeland* v. *Van Blarcom, 8 Stew. Eq. 530; Porter* v. *Woodruff, 9 Stew. Eq. 174; Reed* v. *Warner, 5 Paige 650; Conkey* v. *Bond, 36 N. Y. 427; Dutton* v. *Willner, 52 N. Y. 312; Fox* v. *Mackreth, 1 White & T. Lead. Cas. 188, 219, 263; 1 Story Eq. Jur. § 316; 2 Story Eq. Jur. § 1211 a.*

Clear as is this rule of law, it is not clearer than is the testimony upon the point at issue in the present case. Fellows himself repeatedly, and in the most artless manner, admits that he communicated to Albertson the fact that his mortgages to Hager could be got cheap; that Albertson said he wanted to get them as cheap as he could get them, which, said Fellows, in his testimony *de bene esse*, ".I told him I would assist him in doing;" that in furtherance of this scheme, and with the understanding that the mortgages were to be assigned to Albertson's father-in-law, he took the $440 to be paid on account and fixed the sum to be paid at $1,438.20, the exact amount of his own claim, and that subsequently, and without refunding to Albertson any portion of the $440, he completed the transfer, taking the assignment in his own name. So that by admissions alone, and independently of the plenary proofs furnished *aliunde*, it is clear

beyond peradventure that throughout the whole transaction Fellows was acting for 'Albertson, in order to settle or purchase his mortgage debts which Currey & Hager held against him, and which for some reason they never attempted to enforce. .

Under these circumstances, the fact that Albertson did not complete his payment on September 7th by three o'clock is without significance.   Whatever right Currey & Hager might have had to withdraw from their agreement by insisting that time was of its essence, surely Fellows acquired no right to go on with the agreement in his own name as against his principal.   Upon Albertson's failure to comply with the terms of the contract which Fellows, as his agent, had procured for him, two courses were open to Fellows, to abandon the compromise or to complete it.   In either case the loss or the gain was his principal's.   He chose the latter course, and all that he can now ask is to be made whole.

The views thus outlined lead to a radical modification of the decree rendered in the court below.   Instead of a decree for the full amount of both mortgages with interest from 1886, less $440, the decree should be for $1,438.20, the amount paid for the mortgages by Fellows, less $440, the amount received by him on account, with interest on the balance from September 7th, 1887, the date of the assignment of the mortgages to Fellows.

The record will be remitted to the court of chancery that the decree may be modified in these respects.

*Decree unanimously reversed.*