ALBANY,
August, 1805.

Hastie and
Patrick,
v.
Depeyster and
Charlton.

## Haff *against* Spicer and Potter.

If an affidavit begin with a deponent's name, it is a good signing.

STARR took an exception to the affidavit on which the defendant moved, because it was not subscribed by him.

*Per curiam,* it begins with his name, and that is sufficient.

## Schermerhorn *against* Schermerhorn.

Judgments in the common pleas may be set off against those in this court.

IN this cause a judgment in the common pleas, was allowed to be set off against one recovered in this court.

## Haughtalling *against* Bronk.

If an elector returned on the grand assize leave the state, the court will grant a rule to add another to the pannel.

VAN VECHTEN on an affidavit in a writ of right, setting forth that one of the electors, returned on the grand assize, had left the state, moved to amend the pannel by adding another.

*Per curiam,* as there is no opposition take your rule.

THOMPSON, J. I do not see how it is possible for the court to grant the motion. If they do, the elector will be appointed contrary to the act, and all proceedings under such a pannel consequently void. My opinion is, that you should have a new elector appointed in the same way as the others. I think we have a power to order the sheriff to summon another pannel; but I do not think we can direct another elector to be added.

## Henry Hastie and John Patrick *against* Frederick De Peyster and John Charlton.

On a re-assurance no abandonment is necessary, tho' the primitive assured has abandoned to his insurer; and the re-assurer is liable to the assurer for all

THIS was an action on a policy of re-assurance, in which a verdict for 1049 dols. 26 cts. was entered by consent, in favor of the plaintiffs, subject to the opinion of the court on the following case.

*Hastie* and *Patrick* underwrote 1000 dols. of the primitive assurance upon the body of the brig *Sally,* on a voyage from *Malaga* to *New-York.* During its prosecution the vessel was captured, carried into a port in *St. Domingo,* and

whilst there, *Warren*, the assured, abandoned to the plaintiffs who refused to accept ; an agreement, however, was entered into, on her arrival at *New-York*, by which the underwritten was empowered " to take charge of the said vessel, and " dispose of her to the best advantage, without prejudice to " his claim or abandonment." Under this authority he sold her at public auction, and shortly after commenced an action against the plaintiffs, in which, as the abandonment was proved duly made, a recovery was had for a total loss, amounting to 872 dols. 35 cts. after giving them credit for the proportion of the proceeds to which they were entitled. The costs of the assured's attorney were taxed in that action at 108 dols. 53 cts. those of the now plaintiffs, at 30 dols. 56 cts. making with the sum recovered, and interest, the amount for which the present verdict was taken.

It did not appear that the plaintiffs, upon the offer made to abandon to them, had abandoned to the defendants ; but on the very day the action was instituted on the original policy, they made a formal abandonment in writing, and at the same time gave notice, that they should look to the defendants for every thing they might pay on account of their subscription and the then suit. They further notified the coming on of the cause, that, as the defendants were ultimately looked to, they might aid by bringing forward any defence in their power.

Upon the above facts, these points were raised : 1st, Can the plaintiffs recover the 872 dols. 35 cts. without any other abandonment, than that set forth ? If nay, is more to be recovered than an average loss for the capture and detention ? 2d. Are the plaintiffs entitled to recover the 108 dols. 53 cts. costs paid to the attorney of the primitive assured ? 3d. Are they entitled to recover those paid their own attorney ? 4th. Can they claim interest on any, and which of the above sums ?

*Gaines* and *Harison* for the plaintiffs. The questions on this case resolve themselves into two. Can the plaintiffs recover without having abandoned ? If they can, what is to be the extent of that recovery ? It is settled by the decision of this court, in *Earle* v. *Shaw*, that on a primitive insurance it is not necessary to make an abandonment, be-

*[margin:]* ALBANY August, 1805.

Hastie and Patrick v. De Peyster and Charlton.

costs &c. *bona fide* incurred in defending the suit by the original underwritten, especially when, with notice of its going on, he stands by, and does not offer to settle; for as the re-assurer is entitled to every defence against the insurer, which *he* may urge against the primitive assured, it becomes necessary for the original underwriter to shew he has been obliged to pay, on a just claim against him, and he will be entitled to interest on all he has expended, and paid.

ALBANY,
August, 1805.

Hastie and
Patrick
v.
De Peyster and
Charlton.

cause the party may always recover according to his loss, at the time of action brought. If this be so with respect to an original policy, where the contract is founded on property, it must, *a fortiori*, be so, where the risks assumed by the first insurer constitute the basis of the engagement. It is to indemnify against loss by these, that the re-assurer undertakes, and the hazards of the first contract, are the foundation of the second. 1 *Emer.* 248. It is on this principle, that there is no connexion between the re-assurer and the primitive assured, or his property. *Marsh.* 112. *Park* 276. If an assurer fail, the assured has no *lien* on the re-assurance, in preference to other creditors. 1 *Emer.* 248. The only reason why an abandonment has ever been required, is, that on a technical total loss, the subject matter is transferred by a demand on the underwriter, who then becomes a vendee, as it were, of the property, and liable for the consideration. On payment of the loss, he is an absolute purchaser. This reasoning can never apply to a re-assurance. To abandon property, the assured must have some in himself. The assurer has none ; it is impossible then that he can abandon. To enable him to do it, he must first accept ; and the result would be, that wherever a reassurance was effected, there would be no defence on a claim for a technical total loss. For, to entitle the assurer to recover, he would be obliged to abandon ; and as he could not abandon property which he had not, without first accepting, he would accept in order to be able to recover. The only thing necessary to prove on a re-assurance on a ship, is the value, and that the plaintiff did insure. In a reassurance on goods, the shipping of them is also required. 1 *Emer*, 336. *Pothier, n.* 153. In the case before the court the defendants have the full benefit of an abandonment. The value of the property is carried to their credit. If we are right on the first point, the next enquiry is, what ought we to recover ? The whole of what has been paid. *Roccus not.* 12 says, " *iste secundus assecurator tenetur ad solvendum omne totum quod primus assecurator solverit.*" That this will exceed the amount insured is no objection. Under the clause authorizing the plaintiffs to " work, labor, &c." on account of the defendant, every thing *bona fide* expended

is to be recovered, though it surpass the sum in the policy. *Smith* v. *Scott, April.* 1795, confirmed by *Lawrence & Whitney* v. *Van Horne & Clarkson,* 1 *N. Y. T. R.* 284. Whether the conduct of the plaintiffs was *bona fide* or not, the case will shew; and indeed, as the written abandonment was only in consequence of the defendants' seeming to think one necessary, it is possible a good and legal, though a verbal one, might have been previously made. The general principle in contracts of indemnity is, that all costs incurred shall be paid. *Mayor* v. *Steward,* 4 *Burr.* 2439. *Goddard* v. *Vanderheyden,* 3 *Wils.* 262.

ALBANY,
August, 1805.

Hastie and
Patrick
v.
De Peyster and
Charlton.

*Evertson* contra. The assurer, and re-assurer stand in precisely the same situation with respect to each other, as the assured and his assurer; whatever then is necessary to entitle to a recovery in one case, is also in the other. It is more peculiarly requisite on a re-assurance, than on an original policy. Because the re-assurer is liable over; and in all cases of ulterior responsibility, notice is indispensible. The reason is obvious; that he may either aid in the defence, or, by satisfying the demand, avoid an increase of expense. This privilege has been taken from the defendants, and as they stand in the light of sureties, the court will, in favor of them, lay hold of every act and omission of their principals, by which they may be injured. *Law* v. *the East-India Company,* 4 *Ves. J.* 833. Considering the plaintiffs as our agents, it was their duty to have given us every information that might lessen our loss. Not having done so, they have no right to look for indemnity. The cases cited as to costs do not apply. They relate to persons claiming from another, on account of an injury sustained by his act. But there is an authority in point to shew no costs of the suit against the plaintiffs ought to be allowed. *Seller* v. *Work,* 1 *Marsh.* 207. An insurance-broker had omitted to communicate part of the information contained in his order to insure, and in an action against him, the plaintiff wished to include the costs of a nonsuit against the underwriter, but Lord *Eldon* ruled they could not be recovered, as there was no necessity for bringing the action. So here had the abandonment been made to us, a suit on the original policy might have been avoided.

ALBANY,
August, 1805.

Hastie and
Patrick
v.
De Peyster and
Charlton.

*Harison* in reply. To warrant a recovery on a re-assurance, the same measures cannot be required from the assurer, as, on an original policy, would be demanded of the assured. He must prove *interest* and loss before he can claim. This cannot be asked of the insurer who has no interest. Wherever therefore the contracts vary in their natures, the procedures differ also. In the case from *Marshall*, the plaintiff in both suits, was the same person. He was not defendant in one, and plaintiff in the other, and therefore the reasoning of it is totally inapplicable.

*Per curiam*, delivered by KENT, C. J. Upon the first and most material question in this case, very little information can be found in the *English* books, as re-assurances are rendered unlawful in most cases, by the statute of the 19 G. 2. But re-assurances are valid and usual contracts in *France*, and from the general principles applied to them by the *French* writers, it appears that the contract of re-assurance is totally distinct from, and unconnected with, the primitive insurance, and that the re-assurer has nothing to contest or settle with the primitive assured. The insurer therefore, who makes re-assurance for his own indemnity, is obliged to prove the loading and value of the goods in the same manner as if he was the original insured. It is however, usual for the policy of re-assurance, to contain an express provision, that the re-assured shall only be obliged to produce the evidence of payment of the loss, and the re-assurer will be bound to refund it. This special contract obliges the re-assured to act with good faith, but leaves him in all other respects to his own discretion and prudence, in admitting or contesting the claim of the first insured. *Pothier, n.* 153. 1 *Emer.* 247, 8. 250, 2. 336 to 340. But when no such special contract is made, and none was made in the present case, the re-assurer will be obliged to pay, all that the first insurer ought himself to pay ; and this will impose upon the first insurer the burthen of proving the existence and extent of the loss. When he has done *that*, he has done all that was requisite to entitle him to his indemnity. The notion that he must give notice, or abandon to the re-insurer, as soon as the first insured has abandoned to him, does not appear to be well founded. There is no such rule

ALBANY,
August, 1805.

Hastie and
Patrick
v.
De Peyster and
Charlton.

that appears to be prescribed in any of the books, and it does not necessarily arise out of the nature of the contract. The re-insurer has no connexion, or concern with the first insurance, and is, at all times, bound to indemnify his own insured, when the other can shew that he has been damnified in consequence of the first insurance. The re-insured must take care, at his peril, that the claim against him be well supported before he admits and satisfies it : for the re-insurer will be entitled to avail himself of every defence, that the first insurer might have urged. This is a fundamental principle in the law of securities. And if the re-insured proves the original claim against him to have been valid, when he resorts over to the re-insurer, he then makes out a fair case for indemnity, and such a case is made out in the present instance. *Warren* abandoned the vessel during a total loss, and the plaintiffs were inevitably fixed with the payment of that loss.

The next question is, whether the defendants are bound to pay the costs that the plaintiffs were put to, in defending the suit brought against them by *Warren ?* I am of opinion that they are. On the day that the suit was brought against the plaintiffs, they gave notice of it to the defendants, and the latter might have come forward, and prevented the suit, by payment of the sum demanded. As the plaintiffs were bound to know at their peril, that the claim against them was valid, and gave notice to the defendants as soon as the legal demand was made, they were justified in submitting the claim to the decision of a court of justice, and the costs which necessarily arose in that suit, might be considered as incurred upon reasonable grounds, and for the greater caution and safety. From the cases of *Goddard* v. *Vanderheyden*, 2 *Black. Rep.* 794, and *Mayor* v. *Steward*, 4 *Burr.* 2439, it would seem that such charges are allowed, as composing part of a claim for indemnity; and as interest upon all sums advanced, follows of course, I am of opinion the verdict as taken, ought to stand.

LIVINGSTON J. This is a case of re-assurance. These contracts being prohibited in *England*, unless where the first insurer becomes insolvent or dies, we cannot thence expect any aid, in construing policies of this kind. A recovery is here resisted, because no abandonment was made.

ALBANY,
August, 1805.

Hastie and
Patrick
v.
De Peyster and
Charlton.

to the last insurer. From the nature of the contract, I think none was necessary. We must not confound a re-assurance with the original policy, nor consider a party to the former as in the shoes of the first underwriter. This engagement is to make good all that the first underwriter shall lose or become liable to pay. " *Secundus assecurator*," says *Roccus*, " *tenetur ad solvendum omne totum, quod primus assecurator solverit.*" The original insurer then, notwithstanding his precaution in obtaining this indemnity, has a right to defend himself in any way he thinks proper against the party with whom he contracted, between whom and the re-insurer there is no privity at all. He is not bound even to consult the latter, which however, he will hardly fail to do, when in his power, and which I have no doubt was done here. He is not obliged to accept of an abandonment, and then, as was the case here, he can have nothing to abandon. In short, he may controvert the plaintiffs' right to recover, or pay without suit, as he shall think proper ; only taking care to act with integrity and good faith. If he settles without suit, probably he would be obliged, as against his insurer, to shew that the loss was justly due. If doubtful of the solvency of the party to whom he must look, he may be desirous of reducing the loss as much as possible ; or he may apprehend a bankruptcy not very distant, which may make it his interest, if satisfied that the loss be fair, to pay it immediately, so as not to be delayed in his recourse against his underwriter. It would be to the disadvantage also of a re-assurer, to compel his assured, in all cases, to accept of an abandonment, which would be necessary, if he himself be entitled to one. This species of contract, although not allowed in *England*, is permitted by most of the commercial states of *Europe*, and when confined to its proper object, is reasonable and beneficial. We should not therefore impose on the assured in such a policy, a line of conduct unnecessarily strict or difficult to pursue. I prefer therefore, leaving him as much at liberty as if he had no ulterior responsibility in view, without compelling him to act in conjunction with, or under the controul or advice of the second underwriter ; not permitting him however, which must be a matter of course, to throw on the latter the expense of defending a suit brought by the

original insured, if he will, on notice of such action, which ought to be given as early as possible, pay, or tender the sum demanded by him. On the very day *Warren* commences his action, the plaintiffs give notice of it to the defendants, who take no one step to prevent its progress to final judgment. All the costs, therefore, of that suit, both plaintiffs' and defendants', are a proper charge in this, especially as it is not pretended that its defence was unnecessary or improper. The defendants' counsel having conceded that interest is a proper charge, if their clients be liable for the principal sam, I am for the plaintiffs on all the points made, and they must have judgment accordingly.