THE NEW YORK CENTRAL INSURANCE COMPANY *vs.* THE NATIONAL PROTECTION INSURANCE COMPANY.

A contract for insurance, made by an individual who acts as the agent of both parties in making the same, is voidable in a court of equity, at the election of the principals, or either of them.

Where an agent, without the knowledge of his principal, is acting also in behalf of the other party, in making a contract, the presumption of fraud is not an unreasonable one. But the principle forbidding such contracts is a mere rule of equity. If the proper forms have been observed, the conveyance is good at law, and the title passes. The contract is not void, but only voidable.

But this defense cannot be relied on in an action upon a policy of insurance, if it is not set up in the answer.

No proof can be offered of facts not put in issue by the pleadings.

A defendant who makes a defense by answer, must, besides answering the plain-

New York Central Ins. Co. *v.* National Protection Ins. Co.

tiff's case as made by the complaint, state in his answer every matter of defense of which he intends to avail himself.

Where conditions of insurance, annexed to the policy, are by an express provision in the policy, made a part of the contract, they have the same force and effect as if contained in the body of the policy.

One of the conditions of a policy was that no insurance should be binding until the actual payment of the premium. The money was in a bank where the agent was in the habit of making his deposits, deposited to the credit of the insured. The cashier told the agent of the insurers, at the time the arrangement for the insurance was made, that he could have the money. The agent directed him to let it lie; saying that when he wanted the money he would draw for it. It was not in fact drawn by him until after the fire. *Held* that the agent had waived a strict compliance with the condition, and that he had authority to do so.

Where a policy is issued and delivered to the insured, and the premium is acknowledged in the policy as actually received, this will be held as conclusive, upon the fact of payment, and will bind the insurer.

Where a fire occurred on the 15th of June, and the insured knew of it on the 18th, and sent notice to the insurers, by mail, on the 23d; *Held* that this was a sufficient compliance with a condition in the policy, requiring notice of loss to be given *forthwith.*

Such a provision has never been construed literally to require notice on the day. It has always been held that due diligence, under all the circumstances, was all that was required.

A general agent of an insurance company for effecting insurances in their behalf, while acting within the general scope of his authority in making an insurance, will bind his principals, although he departs from his instructions; unless the assured have notice that he is exceeding his authority.

It is a general rule that whatever is known to an agent must be presumed to be known to the principal.

But *it seems* this rule is confined to that class of cases where the knowledge of the fact comes to the agent while he is acting for his principal, in the course of the very transaction which becomes the subject of the suit.

Hence the fact that an agent by whom an insurance is effected, had previously received instructions from his principals the insurers, will not be regarded as notice to the insured of those instructions and that he had exceeded his authority, although the agent was at the time of making the insurance, the secretary of the insured.

In an action upon a policy of reinsurance, the reinsurer is liable to the insurer for the costs and expenses incurred in defending a suit brought by the party originally insured.

THIS was an appeal, by the defendants, from a judgment entered against them at a special term, after a trial at the circuit. The action was upon a policy of reinsurance.

*I. E. Dewey*, for the plaintiffs.

*Charles S. Lester*, for the defendants.

*By the Court*, MASON, J.   This is an action upon a policy of reinsurance for $2000, executed by the defendants to the plaintiffs through their agent, G. W. Stevens, who was also the agent of the plaintiffs in making the contract of insurance.   The risk was selected and the rates of insurance fixed by Stevens, and the question is, whether this action can be maintained upon the policy.   It becomes important to inquire whether such a contract, made by an agent who acts as the agent of both parties in making the contract, is absolutely void at common law, or whether it is voidable in a court of law ; or whether it is only voidable in a court of equity.   The rule is well settled, both in England and this country, that such a contract is voidable in a court of equity at the election of the principal.   The principle is illustrated in the case of an agent employed to sell.   If such agent become himself the purchaser or the agent of another ; or if he be an agent to buy, and he become himself the seller, or the agent of another in making the sale, the principal may avoid the sale or the purchase, in equity.   If he come to the court upon a timely application, upon the fact being alleged and proved, the court will presume the transaction was injurious and consequently fraudulent ; and this presumption cannot be overcome unless it can be shown that the principal, furnished with all the knowledge the agent possessed, gave him previous authority to become purchaser or seller, or afterwards assented to such purchase or sale.   (*Campbell* v. *Walker*, 5 *Ves.* 678.   1 *Ves. jun.* 287. *Massey* v. *Davies*, 2 *id.* 317.   1 *Russ. & Mylne*, 58.   2 *Myl. & K.* 819.   *Story on Agency*, §§ 9, 192, 211, 214, 210.   *Dunl. Paley on Agency*, 33, 34.   1 *Mason*, 341.   6 *Pick.* 196.   2 *John. Ch.* 252.   5 *id.* 388.   *Hopk. Ch.* 515.   9 *Paige*, 237. 4 *Con. R.* 717.   5 *Lond. Jurist*, 18.   *Smith's Merc. Law*, 101. 13 *Ves.* 103.   8 *id.* 502.   9 *id.* 234.   12 *id.* 355.   3 *Bro. C. C.* 119.   5 *Paige*, 650.   2 *Mylne & Cr.* 374.   *Liver. on Agency*, 423.   4 *Mylne & Cr.* 134.   6 *Ves.* 625.   1 *Story's Eq. Jur.*

§§ 315, 316. 2 *Mason,* 369. 1 *Jac. & Wal.* 294. 1 *John. Ch.* 27. 2 *id.* 394. 3 *Ves.* 740. 4 *Denio,* 575. *Angell on Fire and Life Ins.* 454, 455. *Parsons on Contracts,* 74, 75.) The rule seems to be founded on the danger of imposition in such cases, and the presumption which a court of equity indulges of the existence of fraud which is inaccessible to the eye of the court, and consequently in equity such agreements are regarded as constructively fraudulent. (9 *Paige,* 242. 4 *Kent's Com.* 438, 3*d ed.*) The rule is a well settled one, and the presumption is not an unreasonable one in a court governed by the principles of equity. The principal in fact has bargained for the exercise of all the skill, ability and industry of his agent, and he is entitled to demand the exertion of this in his own favor. (*Parsons on Cont.* 74, 75.) Where the agent, unbeknown to his principal, is acting equally in behalf of the other party, the presumption is not an unreasonable one. This principle, however, like the one that a trustee cannot be the purchaser of an estate, is a mere rule of equity. If the proper forms have been observed, the conveyance is good at law, and the title passes. The contract is not void, but only voidable. (5 *Metcalf,* 467. 5 *John.* 43, 48. 1 *Bing.* 396, 400, 401. 5 *Ves.* 678.. 13 *id.* 603. 7 *Moore,* 315. 5 *Pick.* 521. 3 *Ves.* 740, 751. 2 *John. Ch.* 740, 751. 9 *Ves.* 248. 10 *id.* 381. 14 *John.* 414, 415. 2 *Gill & John.* 227. 4 *id.* 376. 3 *Harr. & John.* 38. *Parsons on Cont.* 75, 76, *note j.* 1 *Peters' C. C. R.* 368. 6 *Halst.* 585. 8 *Cowen,* 361.) No case, I apprehend, can be found where a court of law has pronounced such a conveyance absolutely void. (14 *John.* 418. 5 *id.* 48. *Mackintosh* v. *Barber,* 1 *Bing.* 50. 7 *Moore,* 315. 5 *Pick.* 519, 521. 5 *Metc.* 467.) The rule of which we have been speaking is applicable to all persons placed in situations of trust or confidence with reference to the subject matter of the contract, and embraces trustees, executors, administrators, guardians, agents and factors, attorneys, solicitors, &c. It embraces all who come within the principle. (9 *Paige,* 241.) There is no such rule, in equity even, as that a person standing in such trust relation, cannot himself buy at his own sale. He may purchase and take the title, subject how-

ever to the option of the *cestui que trust,* if he come in a reasonable time, to have the sale declared invalid. (*Campbell* v. *Walker,* 5 *Ves.* 678, *and cases note a.* *Lister* v. *Lister,* 6 *id.* 631. *Ex parte Lacey,* 6 *id.* 625.  15 *Pick.* 31.  7 *id.* 1.  10 *id.* 77.  2 *John. Ch.* 252, 261, 266.  4 *Gill & John.* 376.  *Parsons on Cont.* 76.)   It is not important to inquire whether the executory contract made by an agent who acts and contracts for both parties can be avoided in a court of law ; for in this court the defendant may make any defense which he may have, be it legal or equitable ; and there is no doubt the defense insisted on in this case is a good one if the defendants can be allowed to set it up under the answer which he has interposed.   The complaint alleges that on or about the 6th June, 1852, the plaintiffs procured the defendants to insure, or reinsure the plaintiffs to the amount of $2000 upon this property insured by the plaintiffs, and that the defendants in consideration of ten dollars to them paid by the plaintiffs, did make and execute a policy of insurance to the plaintiffs, and caused the same to be signed by their president, James M. Marvin, and to be attested by their secretary, J. M. Wheeler, and delivered the same to the plain-. tiffs, and that the same was duly countersigned by the defendants' agent, George F. Stevens, who was duly authorized for that purpose. &c.   The following are the only allegations in the answer upon which a defense can claim to be predicated : "And the defendants further answering deny that on or about the 6th day of June, 1852, the said plaintiffs procured these defendants to insure, or reinsure the said plaintiffs as stated in the complaint, and deny that they made and executed a policy of insurance or delivered the same to the plaintiffs as stated in said complaint, and deny that Geo. F. Stevens was the agent of the defendants, or was authorized to countersign the policy of insurance mentioned and set forth in the complaint."   The evidence in the case shows that Stevens was the duly constituted agent of the defendants for making contracts of insurance, and that the defendants, for that purpose, had furnished him with blank insurance policies signed by the president and secretary of the defendants, and that Stevens, as such agent of the defendants, made the said

contract of insurance and issued the said policy of insurance for and in behalf of the defendants. The real ground of defense therefore is, not that the defendants did not make such a policy of insurance to the plaintiffs, for they did make, through their agent, just such a contract as is alleged in the complaint. Nor is the real ground of the defense that Stevens was not the agent of the defendants, authorized to countersign the policy. The real defense to the action is, that notwithstanding such a contract has been made by the defendants, through their general agent for making contracts of insurance, and countersigned, yet that the contract in the case under consideration is not binding upon the defendants, because the same was fraudulently entered into by Stevens, their agent, he acting in the same matter as agent of the plaintiffs. Not that such a contract is absolutely void, but that the defendants may avoid it for the reasons above stated. I do not think such a defense can be interposed under this answer. The rule is well settled under both our former and present system of pleadings, that no proof can be offered of facts not put in issue by the pleadings. The reason of the rule is, that the adverse party may be apprised against what suggestion he is to prepare his proofs. (2 *Comst.* 361, 506, *and cases there referred to.*) This rule is equally applicable to the defendant who makes a defense by answer, and it requires him, besides answering the plaintiff's case made by his complaint, to state in his answer any matter of defense of which he intends to avail himself; and he cannot avail himself of such matter of defense if it be not set up in his answer. (2 *Comst.* 506.) Facts proved but not pleaded are not available to the party proving them; for the court pronounces its judgment, " *secundum allegata et probata.*" (2 *Comst.* 506. 2 *Selden,* 179.) If a party would avoid a contract for fraud he must set up such defense in his answer. (*Bailey* v. *Ryder,* 1 *Selden, notes,* 15. 4 *Barb.* 272. 6 *John.* 565. 12 *Barb.* 348.) In *Imham* v. *Child,* Ld. Thurlow would not listen to any evidence that went to prove a deed fraudulent, because there was no allegation of fraud in the bill. (1 *Bro. C. C.* 94.) And the court of appeals held precisely the

same in *Bailey* v. *Ryder,* (*supra.*) Such defense not being set up in the answer, the defendant cannot avail himself of it.

The next objection to the plaintiffs' right of recovery in this case is, that the insurance policy was not binding upon the defendants for the reason that the premium was not paid. The conditions are, by an express provision in the policy, made a part of the contract. (6 *Wend.* 488.) And they have therefore, the same force and effect as if contained in the body of the policy. (2 *Denio,* 75.) The second condition annexed is, that "*no insurance whether original or continued, shall be binding until the actual payment of the premium.*" This is a condition in the policy, and a condition in a fire no less than in a marine policy, not complied with, defeats the policy. (1 *Phil. on Ins.* 416. 2 *Denio,* 75, 81. 5 *id.* 326.) In the present case the premium was not in fact paid to Stevens till after the fire. The money was in the bank, under the control of Mr. Olcott, the cashier, deposited to the credit of the treasuer of the plaintiffs, and Mr. Olcott told Stevens he could have the money at the time the arrangement for the insurance was made, and Stevens told him to let it lie, and when he wanted the money he would draw for it. The money was not in fact drawn by him till after the fire, and from the 7th to the 10th of July. Olcott was in the habit of receiving and paying out the premiums for the plaintiffs and acted in behalf of the company. He had therefore, I am inclined to think, authority to pay out the moneys in deposit belonging to the plaintiffs for such object, and would at any time have paid this premium upon Mr. Stevens's check, had he wished to draw it; but Stevens preferred to have the money remain in the bank, as that was the place where he made his deposits, until he wished to make his remittance to the defendants. Stevens, therefore, chose to waive a strict compliance with this condition in the policy, and trust to the cashier paying his check, knowing that the cashier had money in deposit belonging to the plaintiffs which he was authorized to apply to such purposes. I think Stevens had authority to waive compliance with this condition in the policy. (1 *Phil. on Ins.* 22, 23, §§ 23, 24.) And that he did so is most manifest.

But the money was paid to Stevens after the fire.   He was the defendants' agent.   His authority was not revoked, and the money was received before the disapproval of the insurance. I am inclined to think, therefore, the defendants are bound; for although both the contract and policy are subsequent to the destruction of the property, the insurer may be bound. (12 *Wheat.* 408.   4 *Cowen,* 643, 665.)   But again, this policy was issued and delivered to the plaintiffs, and the premium is acknowledged in the policy as actually received.   This, upon the authorities, seems to be held as conclusive, and to bind the insurer.   (3 *Kent,* 260, 3*d ed.*   1 *Camp.* 532.   3 *Taunt.* 493. 1 *Sandf. S. C. R.* 58.   1 *Phil. on Ins.* §§ 514, 515.   2 *id.* §§ 2116, 1849, 1993.)

The defendants cannot avail themselves of the objection taken upon the trial that the plaintiffs did not give such notice of the loss to the defendants, as is required by the conditions of the policy ; for the reason that no such issue is presented by the pleadings.   The complaint alleges due and proper notice given of said loss to the defendants upon the receipt of notice thereof, by the plaintiffs, and this averment stands entirely undenied by the answer, and for the purposes of the action, therefore, is deemed admitted.   But if we regard the issue as made by the pleadings, the notice was sufficient.   The fire occurred on the 15th of June and the plaintiffs knew of it on the 18th and they sent notice to the defendants by mail on the 23d. This was a sufficient compliance with the condition of the policy requiring notice of the loss to be given *"forthwith."*   This provision has never been construed literally to require notice on the day.   It has always been held that due diligence under all the circumstances was all that was required. There must not be any unreasonable delay or laches in giving the notice.   (*Inman* v. *The Western Fire Ins. Co.* 12 *Wend.* 452.)

We will now proceed to consider the second point raised by the defendants on their motion for a nonsuit, and which is that Stevens being the secretary of the plaintiffs they were chargeable with notice of his instructions from the defendants,

and consequently with notice that he exceeded his authority. Stevens being the general agent of the defendants for effecting insurances in their behalf, and having acted in the general scope of his authority in making this contract of insurance, he clearly bound the defendants, notwithstanding he departed from his instructions; unless the plaintiffs had notice that he was exceeding his authority. (4 *Cowen,* 645. 2 *Kent,* 620. 23 *Wend.* 18.) The rule is a general one that whatever is known to the agent must be presumed to be known to the principal. (*Dunlap's Paley on Agency,* 260.) I am inclined to think, however, that the better opinion is, that this rule is confined to that class of cases where the knowledge of the fact comes to the agent while he is acting for his principal in the course of the very transaction which becomes the subject of the suit. (2 *Hill,* 452.) If this be so, then the fact that Stevens had before this received instructions as the agent of the defendants should not be regarded as a notice to the plaintiffs, although Stevens was the plaintiffs' secretary at the time. But the real objection was not raised that as Stevens acted as the agent of the defendants in making this very contract and as he had knowledge of the instructions this was known to the plaintiffs. The precise points wherein he exceeded his authority, or did not follow instructions were stated on the motion for a nonsuit, and are, first, that he took less premium than was required; 2d, that he exceeded his authority in not requiring an application, and in not sending to the defendants a copy of the resolutions of the plaintiffs, and also in ante-dating the policy to the 6th of June. It is, perhaps, a sufficient answer to these objections to say that none of these defenses are set up in the answer, and that the defendants cannot be allowed to raise them, for this reason. (17 *Wend.* 199, *and cases referred to above.*)

The only remaining question is, whether the defendants are liable upon this policy of reinsurance for the costs and expenses of the suit brought against the plaintiffs by the Etna Insurance Company. I am free to confess that upon a fair construction of the defendants' contract, I am at a loss to see upon what principle

they can be held, and yet the authorities would seem to hold them. (1 *Arnould on Ins.* 289. 2 *Phil. on Ins.* 749, 676, § 2145. *Hastie* v. *De Peyster,* 3 *Caines,* 190. 1 *Story's C. C.* 458, 462. 3 *Kent,* 278, 3*d ed.*) I am of opinion, for the reasons stated, that the judgment should be affirmed.

[Madison General Term, September 12, 1854. *Gray, Shankland.* and *Mason,* Justices.]