NORWICH & W. R. CO. (BARNARD v.). See Case No. 1,007.

NORWICH & W. R. CO. (IMLAY v.). See Case No. 7,012.

## Case No. 10,364.

### Ex parte NORWOOD.

[3 Biss. 504.] [1]

District Court, N. D. Illinois. April, 1873.

**FOREIGN RECEIVER MAY PROVE DEBT—WAIVER IN TIME IN MAKING PROOFS—LIABILITY OF RE-INSURER.**

1. The receiver of a bankrupt corporation in another state can prove a debt against a bankrupt in this court.

[Cited in Wade v. Sewell, 56 Fed. 130.]

[Cited in Merchants' Nat. Bank v. McLeod, 38 Ohio St. 185.]

2. Any person authorized to give an acquittance of a debt is entitled to prove that debt in bankruptcy.

3. Where an insurance company furnished copies of the proofs of loss to a re-insuring company, and no objection was made to their form or substance, the company thereby waives the right to object that they were not furnished in apt time.

4. Objections to proofs of loss must be made by the company on their presentation, or within a reasonable time thereafter, or they will be considered as waived.

5. A clause in the policy of re-insurance, "loss, if any, payable at the same time and pro rata with the insured," merely gives the company the benefit of any defense, deduction, or equity which the first insurer may have, making the liability of the re-insurer the same as the original insurer. It does not limit such liability to what the original insurer may have paid or be able to pay.

In bankruptcy. This was a motion by Joseph R. Payson, assignee of the Republic Fire Insurance Company, to expunge the claim filed by Carlisle Norwood, as receiver of the Lorillard Insurance Company of New York, on certain policies of re-insurance on which there had been a total loss.

Tenneys, Flower & Abercrombie, for assignee.

A corporation has no existence beyond the territory of the power that created it. Day v. Newark India Rubber Co. [Case No. 3,-685]; Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 588; Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286; County of Allegheny v. Cleveland & P. R. Co., 51 Pa. St. 228. But its existence (if it does exist) may be recognized in other states. Union Branch R. Co. v. East Tennessee & G. R. Co., 14 Ga. 327.

A dissolved corporation cannot sue, having no existence. Commercial Bank v. Lockwood, 2 Har. (Del.) 8; Fox v. Horah, 1 Ired. Eq. 358; President, etc., Port Gibson v. Moore, 13 Smedes & M. 157; White v. Campbell, 5 Humph. 38; Bank of Louisiana v. Wilson, 19 La. Ann. 1; May v. State Bank

of North Carolina. 2 Rob. (Va.) 56; Leathers v. Shipbuilders' Bank, 40 Me. 386; Leach v. Thomas, 27 Ill. 457. The Revised Statutes of Illinois (pages 95, 96) and the act of 1872 make no different rule in a case of this kind.

Foreign receivers have no title or authority by which they can sue. The statutory assignment to a receiver can only vest in him the title to property which is within the state that appoints him. The state has no power to pass the title to propery which is beyond its boundaries; neither can it create an officer whose official character will follow him into another state. So Mr. Norwood has no title to any property here, and he is no "receiver" here, and hence he cannot maintain a suit. Booth v. Clark, 17 How. [58 U. S.] 322; Hoyt v. Thompson, 1 Seld. [5 N. Y.] 320; Hope Mut. Life Ins. Co. v. Taylor, 2 Rob. (N. Y.) 278; Graydon v. Church, 7 Mich. 36; Wheat. Confl. Laws, § 359 et seq.

The assignee has, in effect, attached all the funds of the Republic Insurance Company for the benefit of domestic creditors.

The nature of the contract of re-insurance, when there are no express stipulations, is the policy. Hone v. Mutual Safety Ins. Co., 1 Sanf. 137, affirmed, 2 Comst. [2 N. Y.] 235; Philadelphia Ins. Co. v. Washington Ins. Co., 11 Harris [23 Pa. St.] 250; Yonkers & N. Y. Fire Ins. Co. v. Hoffman Fire Ins. Co., 6 Rob. (N. Y.) 316.

In all these cases the policy said, simply, "re-insure," instead of "insure." They all hold that the "re-insured" must make the same proofs of loss as the original insured. The words of one policy, "this company to pay pro rata, at and in the same time and manner as the company re-insured," were introduced for the very purpose of making a change from the law, as held in the above cases.

On the subject of "waiver" of the requirements of the policy, we make the following citations, showing that a waiver is not to be implied or guessed at without affirmative acts definitely indicating it. Columbian Ins. Co. v. Lawrence, 2 Pet. [27 U. S.] 25; Id., 10 Pet. [35 U. S.] 507; Klein v. Franklin Ins. Co., 1 Harris [13 Pa. St.] 247; Trask v. State Fire & Marine Ins. Co., 5 Casey [29 Pa. St.] 198; Phillips v. Protection Ins. Co., 14 Mo. 220; Taylor v. Merchants Fire Ins. Co., 9 How. [50 U. S.] 390; Beatty v. Lycoming Co. Mut. Ins. Co., 66 Pa. St. 9; St. Louis Ins. Co. v. Kyle, 11 Mo. 278; Patrick v. Farmers' Ins. Co., 43 N. H. 621.

Fuller & Smith, for receiver.

By the laws of New York under which the Lorillard Insurance Company was created, all property, choses in action, and effects, vested in the receiver. No assignment is essential to his title, and he may bring suit in his own name, either at law or in equity. Gillet v. Fairchild, 4 Denio, 80; Mann v. Pentz, 2 Sanf. Ch. 257; In re Eagle Iron

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Works, 8 Paige, 386; Eldred v. Hall, 9 Paige, 640. The general principle is to permit the foreign assignee in bankruptcy to appear and sue in his own name, where there is no conflict with the assignor or with creditors. Hunt v. Jackson [Case No. 6,893]; Holmes v. Remsen, 4 Johns. Ch. 485; Alivon v. Furnival, 1 Cromp. M. & R. 296; Blane v. Drummond [Case No. 1,531]; Ingraham v. Geyer, 13 Mass. 146; Ball v. Claflin, 5 Pick. 305; Dickey v. Harmon [Case No. 3,894]. No conflict here, and certainly none affecting the capacity of the receiver to sue. Mere choses in action are transferable according to the law of the creditor's domicile—indisputably so if there payable. Guillander v. Howell, 35 N. Y. 600; Clark v. Connecticut Peat Co., 35 Conn. 303; Caskie v. Webster [Case No. 2,500]; Speed v. May, 17 Pa. St. 91. The foreign corporation is permitted to sue ex comitate. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519. And so its assignee by operation of law. Hoyt v. Thompson, 1 Seld. [5 N. Y.] 339. Proceedings in bankruptcy are equitable in their nature. If the claimant is entitled to the proceeds, he is entitled to claim. It has been ruled that assignees by operation of law may prove up in their own names. In re Davenport [Case No. 3,586]; In re Murdock [Id. 9,939]. See Dawes v. Head, 3 Pick. 128; Story, Confl. Laws, § 429. Parties in a contentious proceeding, either present or prospective, may agree that the issue shall be decided according to a particular law. Whart. Confl. Laws, 309. Booth v. Clark, 17 How. [58 U. S.] 322, is inapplicable because (a) the question arose as to a receiver appointed upon a creditor's bill; (b) and as between such receiver and a claimant of another state, while here the assignee represents all the creditors; (c) the question was only mooted in relation to a receiver under statutes for the collection of debts, and not for the winding up of defunct corporations.

As to the attachments, they have all been dismissed, but were they pending it would make no difference. (1) Attachments and garnishee process in a state court, after suit in United States court, will not lie. Wallace v. McConnell, 13 Pet. [38 U. S.] 136. (2) The corporation having been dissolved upon suit brought, no suit against it can be maintained. Drake, Attachm. §§ 433, 434; Greeley v. Smith [Case No. 5,748]; Farmers' & M. Bank v. Little, 8 Watts & S. 207; Mumma v. Potomac Co., 8 Pet. [33 U. S.] 286. This is so in the state of the creation of the corporation, as also as to all creditors who have proved up before the receiver, and taken dividends, as is the fact in the case at bar. Clay v. Smith, 3 Pet. [28 U. S.] 411; Baldwin v. Hale, 1 Wall. [68 U. S.] 223, 234; Woodhull v. Wagner [Case No. 17,975]. This makes them parties to the litigation and bound by it. They cannot dispute the receiver's title. (3) Suit against the receiver admits the capacity in which he is acting. (4)

The appointment vested all the property in the receiver. The decree of the New York court operated as a sequestration or forfeiture. 3 Pars. Cont. 473; Jewett v. Preston, 27 Me. 400; Burnside v. Merrick, 4 Metc. (Mass.) 537. (5) The claims of attaching creditors cannot defeat the allowance of the claim in the first instance, and as here presented.

As to the alleged defenses: (1) It is objected that the proofs of loss are insufficient, because they are only copies of the original proofs. This is all the re-insurer can require. 17 Wend. 359. And because not furnished in apt time. The answer is that they were furnished within a reasonable time, and the objection has been waived. Longhurst v. Star Ins. Co., 19 Iowa, 371; Peoria, etc., Ins. Co. v. Lewis, 18 Ill. 553; Peoria, etc., Ins. Co. v. Whitehill, 25 Ill. 466; Hartford Fire Ins. Co. v. Walsh, 54 Ill. 165; Owen v. Farmers' Joint-Stock Ins. Co., 57 Barb. 518. It is said there can be no waiver after time has expired, that is that it requires an express agreement to revivify the contract. If this were so as to defects in matter, it is not as to time. Patrick v. Farmers' Ins. Co., 43 N. H. 623. But conditions as to proofs may always be waived, because they are conditions precedent, not to the undertaking of the insurers, but to the right of action of the insured. The furnishing of any proofs may be waived. Taylor v. Mechanics' Fire Ins. Co., 9 How. [50 U. S.] 403; 9 Casey [33 Pa. St.] 397; Owen v. Farmers' Joint-Stock Ins. Co., 57 Barb. 520; Post v. Aetna Ins. Co., 43 Barb. 365; Bumstead v. Dividend Mut. Ins. Co., 12 N. Y. 81. (2) It is objected that the re-insurance clause means that the re-insurer will pay only what the primitive insurer pays, and evidence attempting to establish a usage to that effect is adduced. The answer is, that the clause is susceptible of no such construction. The design is to regulate the proportions if the re-insurance is less than the insurance, and the loss is not total. Though the original insurer becomes insolvent, the re-insurer is not released from payment in full by reason thereof. Herckenrath v. American Mut. Ins. Co., 3 Barb. Ch. 63; Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443; Storm v. Davenport, 1 Sandf. Ch. 137. Hence the evidence is incompetent. Mutual Safety Ins. Co. v. Hone, 2 N. Y. 240. It was also insufficient. The Reeside [Case No. 11,657]; Adams v. Otterbach, 15 How. [56 U. S.] 539; The Eddy, 5 Wall. [72 U. S.] 481.

BLODGETT, District Judge. The Lorillard Fire Insurance Company was a corporation created by and under the laws of the state of New York, for the purpose of doing insurance business. For some years prior to the 9th of October, 1871, it had an agency in the city of Chicago, at which a large amount of insurance business was transacted. In the due course of its business at Chicago said

company had obtained from the Republic Insurance Company of Chicago policies of re-insurance on its insured interest in certain property here, amounting in the aggregate to $19,500, which policies of re-insurance were in force on the 9th of October, 1871, at which time a total loss of the property thus re-insured occurred.

In consequence of losses sustained by fire in this city on the 9th of October, 1871, the Lorillard Fire Insurance Company became insolvent, and by proceedings instituted in the supreme court of the state of New York. pursuant to the statute of that state, said Lorillard Fire Insurance Company was, on the 23d of October, 1871, dissolved, and Carlisle Norwood appointed receiver of all the estate, debts, credits, effects, and choses in action of said company.

The Republic Insurance Company was also rendered insolvent by the fire of October 9th, and has, within a few months past, been adjudged bankrupt by this court.

On the 27th of December last, said Norwood, as receiver of the Lorillard Insurance Company, filed with H. N. Hibbard, Esq., register in bankruptcy of this court, his proof of a claim against the estate of the Republic Insurance Company, growing out of said policies of re-insurance, to the amount of $19,500, which claim was allowed by the register. The assignee of the Republic Insurance Company subsequently appeared before the register and filed objections to said claim, and his petition that the same be re-examined under the thirty-fourth rule. Proofs were thereupon taken, both on the part of the assignee and receiver, and the issues raised thereon, together with the proofs, have been certified to the court for decision.

From this proof it appears that said Lorillard Fire Insurance Company had issued six policies, amounting in the aggregate to $30,000, on property in this city, on which it had obtained policies of re-insurance from the Republic Insurance Company to the amount of $19,500. All the property thus insured and re-insured was totally destroyed by the great fire in this city of October 9th, 1871, and a total loss proven and adjusted as such to the full amount of the respective policies against the Lorillard Insurance Company. The receiver of the Lorillard has paid dividends to the holders of its policies thus re-insured to the amount of 85 per cent.

The proofs of loss by the policy holders were presented to the adjusters of the Lorillard Insurance Company in November and December, 1871, and the losses adjusted as total losses in each case. These original proofs were forwarded by the adjusters to the receiver, Mr. Norwood, at New York, and copies thereof were, early in March, 1872, furnished to the proper officers of the Republic Insurance Company.

No objections were made to the form or substance of these proofs, but the officers of the Republic insisted, at the time these copies of proofs were presented and at subsequent interviews with the receiver and his agents, that the Republic was not bound to pay any more or any faster than payment was made by the receiver of the Lorillard, basing their refusal upon the clause in the policies of re-insurance which reads as follows: "Loss, if any, payable at the same time and pro rata with the assured." Some time after the fire several creditors of the Lorillard brought attachment suits in the superior court of Cook county against said company and said receiver, and garnished said Republic Insurance Company, which suits were subsequently removed into the United States circuit court in this district; but on the 19th of December last said suits were all dismissed by the respective plaintiffs therein, at their own costs—said suits having been dismissed in consequence of a ruling of the circuit court of this district upon the demurrer of plaintiffs to a plea by the defendant Norwood, alleging the dissolution of the Lorillard Fire Insurance Company by the supreme court of the state of New York.

The assignee of the Republic now urges eleven reasons or objections against the allowance of this claim, but they may all be grouped and considered under three heads. First—That the receiver of the Lorillard Fire Insurance Company has no authority to collect or receive the assets of said company outside of the state of New York; that his functions are limited by the jurisdiction of the court from which he received his appointment. Second—That the re-insured company, and the receiver who represents it, has failed to comply with the prerequisites and conditions of the policies, by giving notice and making proofs of loss in apt time as required by the terms of the policy. Third—That, even if liable at all, the liability of the Republic Insurance Company is limited to the amount which the Lorillard has paid on its re-insured policies.

The first objection raised, questioning the capacity of a receiver appointed by a state court to act beyond the jurisdiction of such court, opens a wide field for inquiry into the rights and powers of officers acting under the authority of foreign courts, but I have not time to discuss at length the interesting class of questions suggested by this branch of the case.

There is much apparent authority in support of the position taken by the counsel for the assignee. In Booth v. Clark, 17 How. [58 U. S.] 322, the supreme court of the United States held very broadly that a receiver appointed under the authority of a state court could not sue in the courts of another jurisdiction.

The same principle was enunciated, although not so elaborately discussed, in Harrison v. Strong, 5 Cranch [9 U. S.] 289, and Ogden v. Saunders, 12 Wheat. [25 U. S.] 359. But it will be noticed that in all these cases there was a struggle for the property of the

estate between the officers of a foreign court and creditors who had acquired liens by attachment or other proceedings, in the jurisdiction where the property was situated. In Booth v. Clark, 17 How. [58 U. S.] 322, the supreme court, after discussing the various English cases and tracing the history of the principle in question, in the English courts, comes to the conclusion that the rule of comity which authorized a receiver of a foreign court, or an assignee in bankruptcy appointed in a foreign jurisdiction, to prove a claim in an English court, had been repudiated and denied through a long series of years, but that after the adoption of a general bankrupt law in England, and the adoption of the same policy in several of the commercial countries of Europe, the rule of comity required that the English courts should recognize the rights of assignees in bankruptcy appointed by foreign jurisdiction—and such has been the rule in England since that time, as the supreme court say, "Such is not the rule in this country," (that is, was not at the time of the decisions referred to,) "because we have no general bankrupt law;" plainly, as it seems to me, indicating that the rule in this country would be changed if the principles of the bankrupt law should be infused into its commercial law—an event which has occurred since the decision of Booth v. Clark [supra].

To my mind there is, to say the least, a strong analogy between the right of the receiver in this case to prove the debt due the estate he represents, and the right of the executor or administrator appointed in another state, to represent the right of a deceased creditor before this court and prove a debt due his testator or intestate, and such right has never been drawn in question.

Under authority of all the bankrupt laws which have been passed by the congress of the United States, the practice has been uniform, so far as I can ascertain, to allow guardians, executors, administrators, and all persons acting in a representative capacity, to appear before the bankrupt court and prove the claims pertaining to the estate which they severally represent. If the bankruptcy proceedings in this case were pending before a United States court in the state of New York, there can be no doubt that such court would recognize the rights of the receiver in this case, and allow him to prove this claim. Why should a federal court of the state of New York recognize the authority of this receiver appointed under the laws of the state of New York, without any relation to the federal laws or the bankrupt law, any more than this court should? Do state lines make any difference? The federal courts take judicial notice of the laws of all the states and of the powers of all state officers, whether executive or judicial. It seems to me it would be applying a very narrow rule to the provisions of the bankrupt law and limit the usefulness of that statute very considerably, if the federal courts should require all executors, administrators, guardians of minors, or conservators of insane or idiotic persons, as a condition precedent to the proving of their claims against the estate of their debtors, to take out auxiliary or supplemental letters of administration or guardianship from the state courts, within the jurisdiction of the court where the bankruptcy proceedings were pending. The bankrupt law is national in its application. It is intended to serve all creditors alike, and gives all creditors acting in a representative capacity, resident out of the district as well as those within the district wherein the proceedings are pending, all the rights to prove their debts which natural persons might exercise, and it seems to me that this court would do gross injustice to the principles of the law to hold that this receiver, clothed as he is with full powers by the laws of the state of New York to represent the estate of the Lorillard Insurance Company, and standing, by virtue of the decree of the supreme court of the state of New York in the shoes and place of the Lorillard Fire Insurance Company, should not be allowed to prove his debt here as fully as if he had been vested with those powers by virtue of a decree from any court within this district.

The bankruptcy law clothes the district courts, sitting as courts of bankruptcy, with all the powers of courts of equity. In several of the cases which have been cited in this case by the counsel for the assignee, reference is made to the hardship of the rule adopted in those cases, and it is suggested that a court of equity might afford a remedy where there was actual danger of injustice being done.

In most of those cases there was a struggle between resident and non-resident creditors—between the citizens of this country and citizens of foreign nations, as to who should have the benefit of assets found within the jurisdiction of our courts, and, by the application of a well known principle of international law, our courts have sustained our own creditors to the extent of the assets within our own boundaries. But anticipating that the application of this rule might work hardship and injury in many cases, the courts have intimated that it lay within the scope and powers of a court of equity to give relief where there was danger that the application of the rule might thus work injustice.

Inasmuch, then, as a court of bankruptcy, as I said before, is clothed with all the powers of a court of equity, it seems to me that even if this court did not feel itself justified in recognizing the authority of the receiver in this case, it would entertain a bill specially filed in the case setting up the authority under which the receiver was acting, and allow him, by special decree, the privilege of proving his claim.

But I do not deem it necessary, as I have already intimated, that he should resort to

that course. It seems to me that the equality of rights of all creditors under the bankrupt law—that principle of equality which runs through and forms the distinguishing characteristic of the bankrupt law—requires that bankruptcy courts shall recognize every person who represents by proper proceedings in the place where he receives his appointment, any creditor, and shall allow such representative to prove and recover his just claim.

There is no doubt—counsel admit it in their argument and in the briefs filed—but that if there had been a voluntary payment made to the receiver by the assignee in this case, such voluntary payment would be good, and the receipt of the receiver would be an acquittance of the debt. And I can comprehend no rule so salutary for the bankruptcy courts to adopt as to assume that any person who is authorized to give an acquittance of a debt, to receipt for a claim, is entitled to prove the debt in bankruptcy, if he be acting in a representative capacity, as trustee, assignee, receiver, executor, administrator, or in any other of the various representative capacities which the law provides for the administration of human affairs. Coming, then, to the conclusion that the receiver has a standing in this court, I dispose of the first objection raised by the assignee in this case, and hold that the assignee can rightfully prove the claim.

I now proceed, for a moment, to the discussion of the other objections which have been raised. The first is that proofs of loss were not furnished in apt time. The policies contained the usual provisions—that the assured shall, within a reasonable time, furnish the insurer with proofs of loss, and shall be subject to examination, etc.

The evidence shows that the persons holding the original policies issued by the Lorillard Insurance Company made their proofs of loss to the Lorillard Company; that those losses were adjusted by the Lorillard Company; that the proofs of loss were forwarded to the receiver, and that copies of those proofs of loss were furnished by him to the re-insuring company, the Republic; that those copies were presented to the officers of the Republic Insurance Company some time in March, 1872, long prior to its going into bankruptcy, and demand made for the payment of the money.

At the time the proofs of loss were presented and the demand made for the payment upon the policies, the secretary of the Republic Insurance Company, Mr. Payson, who was the managing officer of that company at the time, said to the agent of the receiver, "You don't expect us to pay any faster than you pay, I suppose?" and some discussion arose between the agent of Mr. Norwood and Mr. Payson as to the obligation of the Republic Company under these policies of re-insurance; but no exception was taken to the form of proofs. No doubt was expressed but what the losses had accrued to the full extent claimed, nor was any objection taken to the substance or subject matter in the claim, further than to the fact that by reason of the peculiar phraseology of the re-insurance policy, the Republic Company was not bound to pay any faster than the Lorillard, nor any more. During all the discussions between the receiver and the officers of the Republic, which involved several interviews between the receiver himself and the officers of the company, and also several interviews between the agents of the receiver and the officers of the Republic, no objection to the form or substance of these proofs was ever taken.

On the contrary, the evidence shows that, to a considerable extent, if it be not the universal custom in this city, the practice and usage among insurance men, in the settlement of re-insurance policies, is to furnish the re-insuring company with copies, merely, of the original proofs of loss, and notice of the amount at which the loss has been adjusted.

The loss, of course, is settled usually by the company that issues the original policy. It is to that company that the assured looks for his indemnity. He makes his proof to the company whose policy he holds, and that company, if re-insured, after adjusting the loss, submits copies of the proof of loss to the company so re-insuring it.

How far that custom has ripened into a binding usage, I am not prepared to state, nor do I deem it necessary to decide it now, because I think this case can be disposed of upon well known principles of law governing the rights and obligations of insurance companies.

It is a well settled principle, that where a party insured presents notice of his loss, together with proof, or what purports to be proof, and evidence of the extent of the loss which he has sustained, and no objections are taken thereto, objections are held to be waived, and it seems to me that the clear and obvious duty of the officers of the Republic Insurance Company, if they had any doubt of the authenticity of the copies which were presented, was to demand that the original proofs be submitted to them. If they had any doubt, or had any suspicion that a fraudulent claim was being attempted to be forced upon them by means of assumed copies of original proofs, they could have demanded the originals. They could have investigated the genuineness of the signatures; they could have determined whether such losses had been adjusted in good faith, by an examination of genuine proofs of loss submitted by the policy holders.

They make no such claim. They do not question the extent of the obligations of the Lorillard Insurance Company under their policies, but simply stand upon their denial of their liability until the Lorillard has discharged its liability to its policy holders.

This case comes within that large class of cases of which the books are full, in relation to which the principle has been established that an insurance company, if it has objections to a claim, or to proof of a claim, must make them known to the policy holder in such time that they can be remedied, or else the objections will be considered as waived.

The policies in this case all contain the clause which I have already quoted, and upon which the third objection is based, "Loss, if any, payable at the same time and pro rata with the insured." The objection under consideration is of minor importance, because the evidence shows that the Lorillard Company, or the receiver of the Lorillard Company, has already paid eighty-five per cent. of the adjusted losses against it, and has still assets in his hands.

But I do not think that the construction put upon this clause by the counsel for the assignee in this case is a proper one. It seems to me that the true meaning of this clause in the policies is this, that the · re-insuring company stipulates that it shall not pay any more loss than the original company is liable for. "Loss, if any, payable at the same time and pro rata with the insured,"—that is, the re-insuring company is to have the benefit of any deductions by reason of other insurance or salvage, that the original company would have, and also to have the benefit of any time for delay or examination which the original company might claim, so that the liability of the re-insuring company shall be co-extensive only with the liability and not with the ability, so to speak, of the original company.

The original company may have re-insured for the purpose for which re-insurance is usually if not universally accomplished—for the purpose of supplying itself with a fund with which to meet its obligations. It may have placed its own funds entirely out of its control; it may have divided its capital among its stockholders, and may depend solely upon the re-insurance to make good its liability to policy holders.

The intention of this clause was to make the re-insuring company's liability co-extensive, and only co-extensive with the liability of the original insurance company. For instance, suppose an insurance company in the city of Chicago wishes to go out of business. It has money enough to re-insure all its risks, and does so, and goes out of the insurance business. That company does not keep a fund on hand any longer for the purpose of meeting losses as they fall in, but depends upon its re-insurance.

Now, it is to my mind absurd to say, if a loss occurs on one of those re-insured policies, that the company primarily liable is to have its claim against the re-insuring company limited by its ability to meet its obligations to its original policy holders. The very object of making the policy of re-insurance was to place the company in funds with which to make its policy holders whole, and that is defeated if the construction which is insisted upon by the assignee in this case is the true one.

The fair, liberal construction, it seems to me, of this clause, and the salutary one, is to assume that the true intent of it, the judicial meaning, is that the liability of the re-insuring company is to be no greater than that of the original company; that they are not to be compelled to pay any faster than the original company would be compelled to pay, that they are to have the benefit of any defense which the original company would have had. Any deduction—any equity—which the original company would have had against the original insured, is to inure to the benefit of the re-insuring company. I am of opinion that the Republic is liable on these policies to the extent of the adjusted losses, even if the Lorillard had not paid a cent.

Entertaining these views, I cannot do otherwise than hold that the claim of the receiver, proven in this case, must stand, and that the objections of the assignee must be overruled.

NOTE. The contract of re-insurance being one of indemnity, the re-insured should recover only for loss actually sustained. Eagle Ins. Co. v. Lafayette Ins. Co. 9 Ind. 443; Mutual Safety Ins. Co. v. Hone, 2 Comst. [2 N. Y.] 235. This loss includes costs incurred in defending suits, if the re-insured does not, on notice, appear and attend to such suit. Hastie v. DePeyster, 3 Caines, 190; New York Cent. Ins. Co. v. National Protection Ins. Co., 20 Barb. 468; New York State Ins. Co. v. Protection Ins. Co. [Case No. 10,216].

It is held that in case of loss the re-insurer is bound to pay the amount for which he insured, without reference to the fact that the original insurer may be unable to pay in full, or may have obtained an abatement from the insured. 1 Emerig. c. 8, § 14. The insurer may proceed at once against the re-insurer, or may await judgment by the insured. He need not pay the judgment first, but may recover all that the re-insurer has contracted to pay. Mutual Safety Ins. Co. v. Hone [supra]; 1 Sandf. Ch. 137; Herckenrath v. American Mut. Ins. Co., 3 Barb. Ch. 63. Chancellor Walworth, in this last case, thoroughly reviews the authorities.

The insurer must prove up the character and extent of his loss. Yonkers & N. Y. Fire Ins. Co. v. Hoffman Fire Ins. Co., 6 Rob. (N. Y.) 316; Hastie v. DePeyster, 3 Caines, 190. The insurer is bound to fulfill all the conditions of his re-insurance policy. New York Cent. Ins. Co. v. National Protection Ins. Co., 20 Barb. 468. Any benefit from salvage accrues to the re-insurer. Delaware Ins. Co. v. Quaker City Ins. Co., 3 Grant (Pa.) 71. As to priority of contract between the respective parties, consult, Carrington v. Commercial Fire & Marine Ins. Co., 1 Bosw. 152; Hastie v. DePeyster, 3 Caines, 190; Herckenrath v. American Mut. Ins. Co., 3 Barb. Ch. 63.