While the cause was under advisement at June term, the then Chief Judge, Samuel L. Selden, delivered the following opinion:
The only question in this case, which seems to me to require serious consideration, is, whether Mr. Houghton could bind the bank by accepting checks or drafts drawn by himself. It is a well settled rule of the law of agency, to which I apprehend ■ there is no exception, that no person can act as the agent of both parties to a contract, although he himself may have no *295 interest on either side; nor can he act as agent in regard to a contract in which he has any interest, or to which he is a party on the side opposite to his principal. In the present case, Mr. Houghton, as the drawer of the checks, was the party with whom the contract of acceptance was primarily made, and stood, therefore, precisely in those opposite relations which the rule referred to forbids. It is not necessary for the principal in such cases to show that the agent has acted unfairly or that he himself has sustained any injury. The act of the agent is deemed to be unauthorized, and the contract is void.
It is conceded, -in the opinion of the Supreme Court in this case, that, as between the bank and Mr. Houghtpn, the certificate of acceptance of the latter would not be obligatory. But. that court supposed that a subsequent bona fide holder could, nevertheless, avail himself of such certificate. The difficulty in the way of this conclusion, however, is, that the want of authority in Mr. Houghton to bind the bank appeared upon the face of the check. There could be no bona fide holder of such an instrument. An indorsee of commercial paper may, it is true, very frequently acquire rights superior to those of the original party; but never, so far as I am aware, when he has notice of the defect. If he knows the facts which would render the paper void in the hands of the party from whom he derives title, he cahnot recover.
The Supreme Court seems to have supposed that, to prevent the plaintiffs from being considered as bona fide holders, they must have known that the drawer had no funds in the bank to meet the check. This was clearly an error. The acceptance was void in the hands of the drawer, irrespective of the question whether he had or had not such funds. The double relation in which Mr. Houghton stood alone rendered it Void, and of this the plaintiffs were apprised by the check. It could not be necessary that they should have had notice of any other fact, in order to defeat their recovery; as the same facts which render commercial paper void in the hands of the original party, will equally avoid it in the hands of any subsequent holder having notice of such facts.
*296 It is of no importance that the referee has found, as a fact, that the plaintiffs were Iona fide holders. This finding is opposed to the plain law of the case, and is therefore nugatory. This reasoning applies to two only of the checks upon which the action is brought. I see no obstacle to a recovery upon the check drawn by Green. The judgment of the Supreme Court should be reversed, and there should be a new trial.
Smith, J.
The objection that the cause was improperly referred on the ex parte application of the plaintiffs’ counsel at the circuit, cannot now be raised. If there was error in such reference, the defendant should have applied to the circuit judge, or at the special term, to vacate the order. After going before the referee and trying the cause upon the merits without objection, it is too late to raise the question in the court of review that the action was improperly referred.
The motion for a nonsuit was properly denied. When it was made the plaintiff had proved the making of these checks, and their acceptance by the indorsement thereon, by the defendant’s president, of the word “ goodand also a by-law of the defendant’s which impliedly authorized the president to certify checks, and also the due presentment of the checks thereafter and the refusal of the defendants to pay the same. This proof clearly, at least, entitles the plaintiffs to recover upon the $5,000 check made by Thomas Green.
The remaining questions relate to the two checks of Houghton, the defendant’s president, of $5,500 and $10,000, made and accepted by him. The power given him by the by-law to certify checks, clearly did not authorize him to certify his own checks. It is a necessary and universal implication in all cases of agency, that the power conferred upon the agent is to be exercised for the exclusive benefit of the principal. It is repugnant to the very nature and essence of such power to hold that it may be used for .the benefit of the agent in hostility to the interests of the principal. That a trustee or agent shall not act for his own benefit in any matter relating *297 to his agency or trust, is an old and familiar doctrine of the court of equity, frequently asserted in the courts of this country and in England.
The rule is applicable to all persons standing. in a trust relation.' The principal is entitled to the exercise in his behalf of, all the skill, industry and ability of his agent, and to his intensest fidelity to his trusts. This rule is well stated and discussed in the opinion of Judge Demo in the case of The New York Central Insurance Company v. National Protection Insurance Company (14 N. Y.; 20 Barb., 471).
But it is claimed that these rules do not apply in their strictures to negotiable paper; that, when there is an apparent authority to execute such paper, a Iona fide holder is to be protected as in the case with partnership paper in the hands of an innocent holder.
These checks were negotiable, and the certificate thereon, indorsed by the defendant’s president, was equivalent in legal effect, if a valid act, to the acceptance of a bill of exchange to the same amount. Judge Selden, in the case of the Farmers' and Mechanics' Bank v. Butchers' and Drovers' Bank (16 N. Y., 128), says of such checks: “ Each check, if duly certified, imposes upon the bank an obligation to retain the amount for which the check is drawn, and the obligation assumed is substantially the same as that assumed by the acceptor of an ordinary bill of exchange.” Judge Demo uses very nearly the same language in the same case (14 N. Y., 625).
These checks, after their acceptance in the manner above stated, were transferred to the plaintiffs for their full face, as the referee finds, and he also finds that he received the same in good faith. This consideration presents all the difficulty there is in the case. A bona fide holder of negotiable commercial paper is a favorite of the law, and his rights are always guarded by the courts with great care and liberality, from respect to the great interests of trade and commerce. But I do not think this consideration can be permitted to prevail to sustain the plaintiffs’ right of recovery in this case upon these two checks. Clearly, upon well settled principles, Houghton had no power *298 to accept his own drafts or checks in behalf of the bank. The act was a palpable excess of authority, and any person taking the paper was bound to inquire as to the power of the agent so to contract.’
This rule was asserted in the case of Gould v. The Town of Sterling, and Starin v. The Town of Genoa (23 N. Y., 452, 464). In these cases the plaintiffs, as bona fide holders of the bonds in suit, had paid the full valúe for theta, but this court held that they were bound to inquire as to the facts upon which the authority of the agents -depended to issue the bonds. Judge Selden says (p. 464): “ One who takes a negotiable note or bill of exchange, purporting to be made by an agent, is bound to inquire as to the power of the agent.”
Within this rule the plaintiffs were bound to inquire whether Houghton had authority to accept his own checks in behalf of the bank,' so as to bind the bank as acceptor But I do not think the plaintiffs can properly be called bona fide holders of these checks.. The referee finds that he is a holder for value, and that he paid the full amount of the face of the checks in good faith. This is all the referee finds on the facts. In finding as a conclusion of law that the defendants are liable on such checks, he may, perhaps, be deemed to find that they are bona fide holders thereof within the legal sense of such phrase.
But I think the. conclusion of law erroneous: the plaintiffs cannot be truly considered, in a commercial or legal sense, bona fide holders of these checks. A bona fide holder of commercial paper must receive the same in the usual course of business, for value, and without any notice of facts tending to impeach the character or validity of the paper as between the original parties. The plaintiffs cannot claim the protection of this rule. They had distinct notice, by the face of the certificate and the signature thereto, that the acceptance was improper and irregularly made. It was patent on the face of the paper, that the acceptance was a fraud; that the president of the defendant’s bank, in accepting such checks, was violating his duty, and using his official character for his personal benefit, and thereby perpetrating an act of dishonesty, in pal *299 pable violation of his trust. '''No business man of common intelligence could take these checks in good faith, and without suspicion or notice of this fraud. Upon this distinct fact, I would hold that the plaintiffs are not bona fide holders of these checks, and are not entitled to recover the same of the defendants. And the fact, also, that these three checks for $20,500 were taken and held for the period of nearly a year after their receipt by the plaintiffs^ without presentation to the bank for payment, and that this large amount of money was thus left in the bank, to the credit of the drawer of the checks, without interest or any arrangement about it, unexplained, is quite conclusive evidence, to my mind, that the checks were not taken in the usual course of business. But evidence, may be given, on another trial, explanatory of this delay in presenting the checks for payment, which may be quite satisfactory. Evidence on this point was offered, which, I think, was erroneously excluded by the referee.
That this defence, though in its origin and nature of an equitable kind, is now available in an action at law, upon the instrument improperly executed by the agent or trustee, is fully asserted and distinctly held in the opinion of Judge Dentó, in the case of The New York Central Insurance Company v. The National Protection Insurance Company (supra), and is, of course, res judicata in this court.
I think the judgment of the court below should be reversed and a new trial granted, with costs to abide the event.
Gould, J. It is no doubt truly settled by this.court, that a. check upon a bank, certified as good by a proper officer of the bank, is, in some respects, like a bill of exchange, accepted. Precisely in what respects, however, is not accurately ascertained ; as the decisions were limited to the points then before the court.
Strictly speaking, the certificate, “ good,” is an admission by the drawee of a sight bill that he is in funds to pay; and the law imposes the obligation to pay, from that fact, and without any express promise by him; and, in favor of the holder of *300 the check, that liability is fixed; and no subsequent disposition of the funds to other purposes can release the obligation.
Yet, upon a sight bill, there is strictly nó such thing as an acceptance. It is to be paid on presentation. And the whole custom, of certifying bank checks has arisen to meet the convenience of merchants and banks, by putting mere checks in a condition to be passed from hand to hand, and deposited in other banks than those on which they are drawn, as cash, to save the trouble of counting over bank notes or coin, and to avoid the danger of mistakes in such countings; and also to answer the purpose of bank drafts, in remittances.
All these purposes, however, are substitutes for, and intended to be equivalent to, present payment. And the bank officer, who does his duty, notes the fact that he has certified such a person’s check for such amount, and virtually deducts from that person’s credit balance on deposit the amount of the check; thus saving the. amount, in the hands of the bank, to pay the check as soon as it comes -in for payment (either from another bank, in exchanges, or from any holder), such return of the check being usually and regularly either the next day, or within a short period. Such a check has no time to run ; credit, in the light of time given, is no element of it. It represents cash, and is no more to be pledged as security, than the same amount of coin would be. Using it as collateral security is a misuser; and such a use would .call for clear proof of very peculiar circumstances, to warrant the holding that the taker of the check took it bona fide.
In the case before us, the claim is that these plaintiffs paid the full face of these checks to the drawers, at the date of the checks, the checks being then certified. That they held them as security for the money so paid, for nearly a year, and then demanded payment, not of the drawer from whom the security was taken, but from the bank. That is to say, for about a year the bank had held, tied up, to answer to the demand on these checks, $20,000 of the drawer’s money, on which such drawer was losing interest; and the holder of the security, having paid his $20,000 at the date of the checks, was, at the *301 end of the year, entitled to draw his $20,000, without interest; so that he too had lost a year’s interest on $20,000.
On the face of it, that claim is not true. No number of witnesses could prove it. It is utterly incredible. Such a holding, barely that, is not a bona fide transaction, and cannot be made to appear so. Where the fraud upon the bank was perpetrated, is sufficiently apparent. But, in the absence of any explanations of this protracted holding of these checks, it is not apparent what knowledge the plaintiffs had of’ the fraud, or when they acquired their knowledge. That this delay was not opened for explanation, is the fault of the defendant, the objection to inquiring into it, coming first from that side. Still, the nature of the checks is such, that the holding, which the plaintiffs claim, cannot be bona fide, and the referee’s finding, to the effect that it is so, is not supported by the evidence.
There should be a new trial, to find out whether there can be any possible explanation of the facts, consistent with good faith in 'the plaintiffs. And this is needed, irrespective of any of the facts as-to the authority of the president to certify checks, or the knowledge of the directors that he did so. He and they may have so conducted as to bind the bank in some cases, but there are no acts of the directors before us which do "away with the difficulties on the part of the plaintiffs themselves.
Davies and Sutherland, Js., dissented.
Judgment reversed, and new trial ordered.