ALLEN and others *vs.* THE MERCANTILE MUTUAL INSUR-
ANCE COMPANY:

The plaintiffs were the owners of a vessel employed in carrying freight on the
lakes. On the 24th of November, 1863, the vessel sailed from Cleveland,
Ohio, for Ogdensburgh, N. Y. with a cargo of flour, wheat, &c. On the fol-
lowing day the defendants issued to the plaintiffs a certificate of insurance,
whereby they insured them $1200 "on their freight money on flour, inboard
cargo," of the vessel, under and subject to the conditions of open policy
No. 654. During the voyage the vessel stranded and sprung a leak, in con-
sequence of which a large part of the cargo was wet, damaged and lost.
The freight of the flour, as appeared by the bill of lading, was $750, and the
freight on the wheat was $450. In an action upon the certificate of insur-
ance, the plaintiffs recovered $1200 and interest, which included the freight
of the wheat, as well as that of the flour. *Held* that had the objection that
a recovery could not be had for the freight of the wheat, on the ground that
the certificate of insurance covered only the freight money on *flour*, been
raised by the pleadings, and at the circuit, it should have prevailed.
But, the plaintiffs having averred, in their complaint, that they were insured by
the defendants in the sum of $1200 on freight money on inboard cargo of the
vessel, which averment was not denied in the answer; it was *held* that such
averment, being material, stood *admitted of record*, and the plaintiffs must
recover the amount specified in the contract, if they had established other
facts put in issue, and necessary to make out their action.
That if the defendants relied upon any qualification of the contract, or on any
contract different from that stated in the complaint, they should have denied
the averment, or stated the qualification in their answer.
*Held*, further, that the objection thus presented was one of *variance* between the
pleadings and the proof, which should have been taken at the trial, in order
to give the plaintiffs an opportunity to remove it, by amendment, or further
proof; and that it could not be raised by way of exception to the findings of
the judge, after the trial.
The contract of insurance was that the defendants would pay to the plaintiffs
the freight money stipulated for, in case they were prevented from earning it
through the perils of the lakes, rivers, canals, &c. and in case there was no
breach, on the part of the assured, of any of the conditions forming a part
of the contract. The disaster which occasioned the loss and damage having
occurred from the perils of the lake, without fault of the owners, master or
crew of the vessel; *Held* that the plaintiffs were entitled to recover the
freight money, in whole or in part.
The policy contained a stipulation that grounding of the vessel, or mere deten-
tion in any case, should not be cause for abandonment; and that in case of de-
tention on the voyage by the closing of navigation, the risk should continue, but
that an additional premium should be paid for the winter risk. *Held* that this
provision contemplated mere detention from the grounding of the vessel, the

closing of navigation, or other causes; and that the plaintiffs were not precluded, by it, from recovering, where it appeared that the voyage was entirely ·broken up and rendered impossible of completion according to the intention of the parties, by stress of weather.

*Held, also,* that the plaintiffs, having been prevented from earning full freight, by delivering the property specified in the bill of lading, by reason of a peril insured against, the defendants were bound to save them harmless and indemnified, and the plaintiffs were entitled to recover the entire sum claimed, notwithstanding they had voluntarily surrendered up the cargo, after the disaster, without exacting freight.

Facts proved, but not pleaded, are not available to the party proving them.

THIS is an appeal from a judgment directed by Justice JAMES, after a trial, without a jury.

The plaintiffs were owners of the brig Rio Grande, employed in carrying freights on the lakes. On the 24th November, 1863, the brig sailed from Cleveland, Ohio, for Ogdensburgh, N. Y. with an inboard cargo on flour, wheat and a few bars of iron. On the following day (the 25th) the defendants issued to the plaintiffs a certificate of insurance, whereby they insured them $1200, as expressed in the certificate, "on their freight money on flour, inboard cargo," under and subject to the conditions of open policy No. 654, issued by the defendants. The freight on flour was · $750, and that on wheat $450. On her passage, and at the mouth of the Welland canal, the brig, by stress of weather and without any fault of the owners, master or crew, stranded and sprung a leak, in consequence of which a large part of the cargo was wet, damaged and lost.

The brig was taken to Buffalo for repairs, and the cargo removed. When repairs were effected navigation had closed for the winter. The cargo was insured by its owners and was abandoned to the insurers. It was also found that the part of the cargo saved could not, with due diligence, have been forwarded by water before the close of navigation. Nor could it have been forwarded by rail from Buffalo, except at an expense far greater than the entire freight originally agreed to be paid; and if retained until the opening of navigation

the following year, it would have been valueless. That had the damaged wheat been taken to Ogdensburgh by rail; it would not have then sold for enough to pay its freight. That notice of said loss was immediately given; that sixty days expired on the 31st day of January, 1864.

From these facts the judge's conclusions of law were: That by reason of the accident, the Rio Grande being unable to perform her voyage and earn her freight that season, the plaintiffs were entitled to recover the amount of said insurance and interest. Judgment was given for the plaintiffs for $1200, the sum specified in the certificate of insurance, with interest.

*I. Lawson,* for the appellants. I. The judge who tried the cause erred in allowing the plaintiffs to recover for the freight of the wheat.

The freight of the flour, as appears by the bill of lading, was $750. The freight of the wheat was $450. The plaintiffs recovered $1200 and interest; of course it includes the freight of the wheat as well as the flour. But the policy and the certificate of insurance, which are the only evidences of the contract, show that the insurance was *only on freight money on flour*. The policy was not a valued one. The plaintiffs were therefore bound to prove the value of the interest insured and at risk. (*Arnould on Ins. Perkins'* ed. 309. *Phillips on Ins.* §§ 33, 1180.) The bill of lading was the only evidence upon that point, and shows the value of the interest at risk, to wit, the freight on the flour, was $750. That amount therefore, with interest, was all the plaintiffs were entitled, in any event, to recover.

II. The second point is raised by the exception taken to the decision of the judge, whereby he finds that the defendants, by the certificate referred to, took upon themselves all perils whereby the plaintiffs might lose their freight money. The certificate states that the plaintiffs are insured under and subject to the conditions of policy No. 654, issued by the

defendants. That policy shows that instead of being, as found by the judge, an insurance against all perils by which the plaintiffs might lose their freight money, there is a long list of express exceptions; one being an express exception of loss from detention by the closing of navigation, the very peril by which the loss happened, according the findings of the judge; for he finds that the vessel was repaired by the 15th of December; that the Welland canal was then closed by ice, and therefore it was impossible for the Rio Grande to proceed on her voyage; that the dry wheat might at that time have been carried on to Ogdensburgh in good condition, and the flour and damaged wheat in a damaged condition; and that by reason of the brig's being unable to complete her voyage and earn her freight *that season*, the plaintiffs were entitled to recover. The finding, therefore, that the defendants insured the plaintiffs against all perils by which they might lose their freight money, was an essential element of the finding that the defendants were liable for a loss of the voyage for that season, happening by reason of the closing of navigation for the season by ice.

III. The third point is upon the second exception to the decision of the judge, by which he finds that, had the damaged flour and wheat been retained until the opening of navigation in the spring, it would have been valueless. This finding, as to the flour, is entirely unsupported by the evidence. The only evidence as to the condition of the flour, or the effect of keeping it in the condition it was in, is the testimony of the witness Larkin, who says, "the cargo was wet and damaged, both the flour and the wheat," and "the flour would have been sour." On his cross-examination he testified: "I did not examine the flour to see its condition; I do not know how deep the flour was wet in; it is my opinion the flour would have soured; that is all that would have happened or resulted from its being wet; it would then have been good for something; I don't know how much of the cargo was wet; some of the flour was under water twelve days."

This is *all* the evidence in the case, from which an inference can be drawn that the flour would have been valueless if kept until the opening of navigation in the spring, as found by the judge.

IV. The fourth point which the defendants make, is upon the exception to the decision of the judge, whereby he finds, "that, by reason of the accident, the Rio Grande being unable to perform her voyage and earn her freight that season, the plaintiffs are entitled to recover the amount of said insurance and interest." This is virtually a finding (taken together with the fact found, that, at the time the brig was repaired, the Welland canal was closed by ice, and no vessel could pass from Lake Erie to Lake Ontario,) that the delay occasioned by the loss of time necessary to repair the brig, together with the additional delay caused by the freezing up of the canal in the meantime, by which a portion of the voyage was lost for that season, was a total loss of the freight for the voyage. This view of the case we claim is clearly incorrect. 1st. The parties, by the very contract under which the claim is made, had stipulated that the grounding of the vessel, or mere detention in any case, should be no cause for abandonment, and that in case of detention on the voyage by the closing of navigation, the risk should continue at an additional rate of premium. This is clearly a stipulation against any liability for loss of freight by detention arising from the closing of navigation by ice. But the loss of the voyage for the season, by reason of which the judge finds the defendants are liable, was clearly caused by the closing of the Welland canal by ice ; for, as he also finds, the brig was ready to resume her voyage by the 15th of December, and of course might have gone on and completed it, had not the very peril stipulated against intervened. If, therefore, the loss of the voyage for the season, by such detention, is to be construed to amount to a total loss of the freight for the voyage, it is clearly such a loss as the defendants are relieved from any liability for, by the stipulations above cited. 2d. But we

insist, as a matter of law, aside from the stipulations of the contract, that a mere detention which prevents the completion of the voyage during the season, is not a circumstance which entitles the assured to recover. *Palmer* v. *Lorillard*, (16 *John*. 347,) was a case where a ship was delayed by a blockade, from February to September. The owners of the goods then demanded them of the master of the vessel, and he refused to deliver them unless freight was paid. It was held by the Court of Errors, Kent delivering the opinion, that the delay did not put an end to the contract of affreightment, and that the owners of the vessel were right in retaining the cargo, unless freight was paid or tendered. He cites, with approval, the case of *Hadley* v. *Clarke*, (8 *Term Rep*. 259,) in which a delay occasioned by an embargo, which lasted more than two years, was held not to exonerate the ship owner from his obligation to continue the voyage when the embargo was removed. He also cites the remark of Lord Kenyon, made in the same case, "that ships had often been driven by the violence of the winds to Denmark, where they had been obliged to winter, yet the contract of affreightment remained." To this point see also *Parsons* v. *Hardy*, (14 *Wend*. 215 ;) *Bowman* v. *Teall*, (23 *id*. 309, *per Cowen, J.;*) *Wibert* v. *New York and Erie R. R.*, (12 *N. Y. Rep*. 245 ;) *Howard* v. *The Astor Ins. Co.*, (5 *Bosw*. 50, 56.) The detention, therefore, not having deprived the assured of his lien upon the cargo for freight, or of his right to retain it and carry it on, and earn full freight, when the cause of detention was removed, the loss, if he chose to surrender the cargo without exacting the payment of freight, was a consequence of his own negligence, and not of the perils insured against, and they can not therefore recover. (*Griswold* v. *N. Y. Insurance Co.*, 1 *John*. 204.) In this case, Kent, J. at page 211, referring to the case of *Herbert* v. *Hallett*, says, "it was an action on a policy on freight on a voyage from New York to Havana. The voyage commenced, and the brig was stranded at Sandy Hook. The cargo was unloaded

in an injured state, and brought back to New York, and the vessel returned in three or four days, and in *two* or *three* weeks was completely repaired. The court held that the freight of the voyage was lost by the negligence or folly of the plaintiff, and not by the perils of the sea ; for that he *might have taken on the cargo, but having neglected to entitle himself to freight against the shipper, he ought not to recover it of the insurer.''* In the same case, which came again before the Supreme Court, (3 *John.* 321,) on a special verdict rendered upon a new trial ordered on the former appeal, Kent, Ch. J. delivering the opinion of the court, says (p. 326) "the ship was in a condition to be immediately and easily repaired, and in seventeen days she was repaired and ready for sea. If the plaintiffs, instead of abandoning to the defendants, had offered to proceed with the cargo, and the owners of it had refused, they would have made themselves liable for the full freight. If the owners had consented, the plaintiffs would have been bound to proceed, and run the risk (against which risk the defendants had assured by the policy) of losing the freight by the loss of the cargo in the course of the voyage, or of earning freight by its safe arrival at the port of destination. For the plaintiffs to abandon without assuming this risk, was unreasonable and inadmissible. It would no doubt have suited very well with their convenience to have received the full freight for the voyage, without ever leaving the port of New York, and to' have employed the time which that voyage would have consumed, in earning freight on some other. But they can not be permitted to enjoy this good fortune unless they can show clearly that the freight insured was lost, either by the act of the shipper or by the perils of the sea. Whether it would have been wise or foolish in the shipper to have sent on the flour in the condition it was in, was a question not to be put by the plaintiffs. It was none of their concern. The risk of the value of the cargo at the place of delivery, lay with the owners of the cargo. All that the plaintiffs had to do, by their con-

tract, was to provide the means to take on the cargo, by repairing their ship or procuring another. That case is in all its circumstances very similar to the present one, excepting as to the delay caused by the closing of navigation by ice, but more favorable to the plaintiffs, and should be decisive of this. To the same point see also *Clark* v. *Mass. Fire and Marine Ins. Co.*, (2 *Pick*. 104;) *Saltus* v. *Ocean Ins. Co.*, (14 *John*. 138;) *Ogden* v. *The Gen. Mut. Ins. Co.*, (2 *Duer*, 218, *and cases there cited.*) The fact that the shippers of the cargo had abandoned to the insurers upon that interest, does not vary the rights of the parties to this suit, as appears by the case of *Griswold* v. *The N. Y. Ins. Co.*, (1 *John*. 205,) in which it appeared that the owner of the cargo had abandoned to the underwriter upon that interest, but it was held that notwithstanding that fact, the ship owner might have retained the cargo and carried it on, and thereby have entitled himself to full freight, and having failed to do so, he could not recover of his insurer upon freight. The abandonee of the cargo, in such a case, stands in the position of the original owner, and takes the cargo subject to the lien for freight. (*Smyth* v. *Wright*, 15 *Barb*. 51.) As to the wet wheat (if it should be held that the defendants' contract covers the freight of the wheat) we say, that as it appears by the evidence, that the wet wheat might have been dried at Buffalo in three or four days, so as to have been in a condition to be carried on, and as it is not shown how much it would have cost to get it dried, and for aught that appears it might have been dried for much less than the value of the freight, the plaintiffs are not entitled to recover for loss of freight upon that, even upon the ground of its damaged condition. (*Clark* v. *Mass. Fire and Marine Insur. Co.*, 2 *Pick*. 104. *Jordan* v. *Warren Ins. Co.*, 1 *Story*, *cited and approved in Ogden* v. *The Gen. Mut. Ins. Co.*, 2 *Duer*, 220, 221.) The judgment can not be maintained, either upon the facts as found by the learned judge before whom the cause was tried, or as shown by the evidence. The evi-

dence shows that the vessel was repaired in less than three weeks from the time of the accident, so as to be in a condition to complete her voyage and earn her freight, and so the judge finds. Two thousand seven hundred and forty-four bushels of the wheat was dry and uninjured, and in a condition to be carried on, as the evidence shows and the judge finds. The wet wheat might have been dried (whether at such expense as would have exonerated the plaintiffs from doing so, does not appear,) and could then have been carried on. The flour could have been carried on in its damaged condition, soured, but still remaining *in specie*, and of some value. There is no evidence to show that if the wet wheat had been dried, and the whole cargo retained by the plaintiffs until the opening of navigation in the spring, they could not have carried it on, despite the perils insured against, and earned freight. Having voluntarily surrendered up the cargo, without exacting freight, under circumstances where they might have insisted upon earning and receiving full freight, in the language of Chancellor Kent, in *Griswold* v. *The New York Insurance Company*, "The freight was lost by the negligence or folly of the plaintiffs, and not by the perils of the sea."

*Wm. C. Brown*, for the respondent. I. The appellants' first objection to the recovery is, that the insurance was only on freight money *on flour*; that the freight strictly on flour was only $750, and the other $450 was on wheat; and that the plaintiff having foolishly insured $1200 on his freight money on flour, when it only amounted to $750, should only have recovered the latter sum, instead of the full insurance. 1. But the question as to what was the contract of insurance, was settled by the pleadings. The complaint alleges that the insurance was "on freight money on inboard cargo of brig Rio Grande, at and from Cleveland to Ogdensburgh." The answer admits that this was the contract, by not denying it. A fact admitted by the pleadings is not open to controversy, without an amendment. 2. This question was not raised on

Allen *v.* Mercantile Mutual Insurance Company.

the trial. If it had been, the defendants might possibly have obtained permission to amend their answer, provided they could have shown that the real contract was not as stated in the complaint. But then the plaintiffs would have been allowed to amend the complaint, and show that the word "flour" was inserted in the certificate by the defendants' agent by mistake, and have it reformed. That it was a mistake is quite evident. The plaintiffs having contracted to carry flour for $750, and wheat for $450, could not possibly have bargained for an insurance of $1200 on freight money on flour alone. There was, doubtless, a merely clerical error of the defendants' agent in inserting the word "flour" in the certificate. The defendants were compelled to verify their answer, and could not swear that the actual contract was different from that stated in the complaint. They were constrained, therefore, to concede it; and ought not to be allowed the benefit, on appeal, of a defense which they dare not set up, either in their answer or on the trial.

II. The plaintiffs chartered all the under deck part of their brig "Rio Grande" to White & Co., to bring a cargo of wheat and flour from Cleveland to Ogdensburgh, on the completion of which undertaking, on their part, they were to receive the freight money, to the amount of $1200. They would not be entitled to freight unless they performed the contract on their part, or unless the shippers voluntarily dispensed with full performance; in which case they would be entitled to freight, pro rata, to the extent of their part performance. In view of the fact that the dangers of navigation might prevent performance, they procured insurance from the defendants, whose business it is (or is by them pretended to be) to take such risks, for an adequate consideration, which they themselves prescribe. They had a right, then, to expect that, with reasonable diligence on their part, they would certainly receive their freight money from the consignees or insurers; from the consignees if they were *enabled* to perform; from the insurers if they were *not*. In the regular course of the

voyage the vessel, by stress of weather, was stranded at Port Colborne; rendered unable to complete her voyage; and the plaintiffs were unable to obtain any thing for freight from the owners or consignees of the property. *Prima facie,* there-- fore, they were entitled to receive the whole from the insurers. They lost the whole by a peril insured against. The defend- ants claimed, on the trial; (and it was the only defense claimed there,) that they were not bound to pay for that part of the freight chargeable on the dry wheat and the flour, because the plaintiffs might, and should have carried that to its place of destination, and earned freight thereon. We concede that if the vessel could have been repaired, and the voyage completed, so as to enable the plaintiffs to deliver the property to the consignees, in a reasonable time and manner, that should have been done; or if they could have procured other means of transportation to complete the voy- age in a manner to entitle them to freight from the con- signees, they should have done so, and thereby have saved to the insurers all of the twelve hundred dollars, except what it would cost to fulfill their contract. But if to do this would have cost the plaintiffs more than the whole sum insured, then it is clear, not only that they were not bound to do it, but also, that their doing so would have been of no possible advantage to the insurers. Pro rata freight is only due when the master is *able* and willing to transport the goods to the place of destination, and offers to do so. When there is neither the ability nor the offer, the owner is entitled to take his goods at the place of disaster, free of freight. (*Atlantic M. Ins. Co.* v. *Bird,* 2 *Bosworth,* 195.) 1. In this case it is perfectly clear that the vessel was wholly unable to complete her voyage. Before she could be removed from the shoal the Welland canal was closed. Neither the grain nor the flour was in a condition to be carried without ruining the cargo, and endangering the health and even the lives of the crew, from the foul effluvia which proceeds from rotten grain

and flour. 2. Other transportation could not be procured by vessel. This was most abundantly proved on the trial, by the testimony of the captain and Messrs. Allen & Guyles. 3. If other transportation could have been procured by vessel, it would have cost more than the plaintiffs' whole freight.

III. In considering what ought to have been done, we must not look solely to the interest of the insurers, but also to the rights and interests of the owners of the cargo, and to the duty of the owners of the vessel to the owners of the cargo. As between the owners of the goods and the owners of the vessel, the right of the latter to furnish other transportation, in case of disaster, is a right to be exercised *reasonably and with diligence*, and he has no right to hold the goods for months, merely to employ the cheapest possible conveyance. As soon as the goods were in a condition to be forwarded, they should be sent on by the earliest conveyance. They could be sent by rail, and it was the duty of the owner, if he undertook to send them at all, to send them by rail, as he did his own goods. But the testimony shows that such transportation would cost more than the whole freight.

IV. We insist that, in the condition the cargo was in when the vessel was raised, the plaintiffs were not bound, and would not have been justified, to undertake the business of separating and drying the wheat, or separating the wet flour from the dry, without which it was impossible to send forward any part of the cargo. That is a business they are not supposed to understand, and if they had undertaken it they would have incurred great risk; more even than the defendants insured against.

V. It should be conclusive of this case, that there was nothing the master could have done, towards the fulfillment of his contract, that would have saved any part of the freight. The testimony shows that it was impossible to have the goods transported to the place of destination, from the place of disaster, for less than $1200.

*I. Lawson,* in reply. In reply to the first point made by the respondents, the appellants say that it is *not* admitted by the pleadings, that the freight of the wheat, as well as of the flour, was insured by the defendants. The allegation in the complaint is, that the defendants insured the plaintiffs, "on freight money on inboard cargo of brig Rio Grande, at and from Cleveland to Ogdensburgh;" not on the freight money on inboard cargo; not on *all* the freight money on inboard cargo, nor on freight money on *wheat.* The defendants could not deny that they had insured $1200, "on freight money on inboard cargo." The flour was "inboard cargo," and the defendants had insured $1200 on it. The fact is, the language of the complaint is equivocal, and comes as near affirming that the defendants insured upon the freight of both the wheat and flour, as the plaintiffs dared to swear, having the contract before them, by which it *clearly* appeared that the insurance was only upon freight upon flour. The allegation of the complaint was ambigious, and should therefore be taken most strongly against the pleader. The defendants should not be presumed to have admitted any thing more than would be *necessarily* inferred from the language of the complaint. Besides, the plaintiffs themselves proved, by introducing in evidence the certificate of insurance, that the insurance was upon freight of flour alone; and they should, therefore, not have been allowed to recover for freight on the wheat. (*Ely* v. *Cook,* 9 *Abb. Pr. R.* 366.)

The plaintiffs' counsel says the question was not raised upon the trial. How or when could the defendants have properly raised the question? By requesting the judge to grant a nonsuit as to the freight on the wheat, or by asking him to find specifically that the plaintiffs were not entitled to recover the freight of the wheat? All that the defendants wished him to do was to refrain from finding the plaintiffs entitled to more than they showed themselves entitled to. If the plaintiffs failed to make out a case, or any part of their case, the defendants were entitled to the decision, so

Allen *v.* Mercantile Mutual Insurance Company.

far as that failure extended, without making any more specific demand for it than they did make by answering and defending against the plaintiffs' whole claim.

As to the other points made by the plaintiffs, it is sufficient to say that they in no way meet the point made by the defendants, that both vessel and a large portion of the cargo were in a condition to enable the owner and master to complete the voyage and earn a large portion of the freight. They might have retained the cargo until the opening of navigation in the spring, and then have completed the voyage and earned freight, by carrying the cargo on in their own vessel, the only way in which they had contracted or were obligated to carry it. The delay of the voyage until spring, caused by the closing of navigation by ice, would have furnished no grounds for the owners of the cargo to demand it without paying freight.

*By the Court,* BOCKES, J. The first point taken is, that there was error in permitting a recovery for the freight of the wheat. This objection is urged on the .ground that the certificate or contract of insurance covered only the freight money on flour. The language of the certificate is $1200, " on freight money on flour, inboard cargo ;" and inasmuch as the policy was not a valued policy, the plaintiffs could recover only to the extent of the risk. Had this objection been raised by the pleadings, and at the trial, I am of the opinion that it should have prevailed. The plaintiffs, to make a cause of action, were required to state a valid contract of. insurance, in the complaint. So it was therein averred, in appropriate terms, that the plaintiffs were insured by the defendants, in the sum of $1200, on freight money on inboard cargo of the brig Rio Grande. This was a material averment, and unless denied by the answer, must stand as admitted. (*Code,* § 168.) On recurring to the answer, it will be found that this averment is not denied, or even alluded to by way of qualification. Under this state of the

pleadings, all the plaintiffs were bound to prove to make out their cause of action, were the facts denied in the answer. The other averments of the complaint stood admitted. If the defendants relied upon any qualification of the contract, or on any contract different from that stated in the complaint, or intended to put the latter in issue, they should have denied the averment, or stated the qualifiation, in the answer. It has been repeatedly held that facts proved, but not pleaded, are not available to the party proving them. (6 *N. Y. Rep.* 179. 2 *id.* 606. 12 *id.* 9. 25 *id.* 266. 20 *Barb.* 468.) The objection, too, as here presented, is one of variance between the pleadings and the proof. This objection should be taken at the trial. (12 *N. Y. Rep.* 18.) In this case it was held that the objection that the case made by the evidence varies from that stated in the complaint can not prevail on a review unless made at the trial. The reason of the rule is this, that the objection should be raised in time to give the party an opportunity to remove it. Generally this result can be attained by a motion to amend, which will almost invariably be granted. Sometimes it may be effected by further proof. In this case, if the objection had been raised at the trial, *non constat* but that the plaintiffs would have been allowed to amend their complaint, and have given proof that the contract did in fact cover the entire inboard freight money, and that the word *"flour"* was inserted, or other words, as *"and wheat,"* omitted in the written instrument by mistake. (16 *N. Y. Rep.* 263. 28 *id.* 438.) For these reasons, too, it will be readily perceived that the objection can not be raised by way of exception to the finding of the judge, after the trial.

As the case comes here, the contract of insurance between the parties, as stated in the complaint, is *admitted of record;* and the plaintiffs must recover the amount specified in the contract, if they have established other facts put in issue and necessary to make out their action.

The contract of insurance in this case, briefly stated, was

that the defendants would pay to the plaintiffs the freight money stipulated for, in case they were prevented from earning it through the perils of the lakes, rivers, canals, &c. and in case there was no breach on the part of the assured, of any of the conditions forming part of the contract. There is no dispute in regard to the cause of the disaster which occasioned the loss and damage. It occurred from the perils of the lake, against which the defendants had guarantied to the plaintiffs protection, without fault of the owners, master or crew of the vessel. The plaintiffs were therefore entitled to recover the freight money, in whole or in part.

It is insisted that in this case no recovery can be had, because of the stipulation in the policy, that the grounding of the vessel, or mere detention in any case, should not be cause for abandonment; and that in case of detention on the voyage by the closing of navigation, the risk should continue, but that an additional premium should be paid for the winter risk. This clause contemplates mere detention from the grounding of the vessel, the closing of navigation, or other causes. But here there was more than mere detention. The voyage was entirely broken up and rendered impossible of completion according to the intention of the parties, by stress of weather. Certainly impossible to an extent which deprived the plaintiffs of all advantages to be derived or realized from their contract with the shippers. The plaintiffs are not, therefore, precluded from recovering by reason of this provision of the policy.

Again ; it is claimed that the plaintiffs can not recover for the freight money, or in any event, not the full amount; because they voluntarily surrendered up the cargo without exacting freight, under circumstances where they might have insisted upon earning and receiving it. It is beyond dispute that the plaintiffs were prevented from earning full freight on the contract for transportation. They were unable to deliver the property, specified in the bill of lading and received on board the vessel, at its place of destination.

The inability to deliver was occasioned by a peril against which the plaintiffs were guarantied by their contract of insurance, and it follows that the defendants were bound to save them harmless and indemnified against the loss and damage which ensued by reason of such peril and disaster. And in my opinion they were entitled to recover the entire sum claimed.

According to the facts found, and they seem well found from the evidence, the plaintiffs were damnified by the disaster, to the full amount of the freight money. It is said they were under obligation to forward the part of the cargo saved, but the case shows that the damage to them as a result of the disaster would have been enhanced, rather than diminished by so doing. It does not, therefore, lie with the defendants to complain that they took no further steps towards the delivery of the property at the place of destination. It is undoubtedly true, that as between the plaintiffs and the owners of the cargo, the former were bound by law to use all reasonable diligence in forwarding the goods saved from the disaster, unless thus abandoned to and accepted by the owners. But this ceased to be a matter of any importance to the insurer of the freight money, when the damage or loss to the assured would be the same, whether he forwarded the goods or abandoned them to the shipper or owner. In this view of the case it is unnecessary to examine the question whether the owners were not, in fact, entitled to take the remaining property at the place of disaster, or at Buffalo, free of freight, I am satisfied that the plaintiffs have established a right to recover full freight money in this case. The authorities cited by the defendants' counsel apply to cases of detention — mere interruptions of the voyage — not, as I think, to a case like this, where the voyage was entirely broken up and defeated. As regards these plaintiffs, all chance of deriving any benefit from their contract with the shipper was defeated as effectually and completely as if the vessel had sunk in ten fathoms.

Some objections to the findings of the learned judge, not falling within the line of examination above pursued, have

been raised by the defendants' counsel; but I am satisfied that all the findings essential to the support of the judgment are fully sustained by the evidence.

The judgment must be affirmed, with costs.

[SARATOGA GENERAL TERM, July 10, 1866. *Bockes, James, Rosekrans* and *Potter*, Justices.]