## WILLS EXECUTED IN ANOTHER STATE AND NOT PROBATED IN OHIO.

[Circuit Court of Hancock County.]

MORRIS HOSLER v. LESLIE HAINES ET AL, AND LAURA P. BARR v. LESLIE HAINES ET AL.

Decided, June 21, 1905.

*Title—How Affected by a Foreign Will—Not Probated in Ohio for Forty Years—Words Conveying a Fee in Indiana—But only a Life Estate in Ohio—Rights of Remaindermen in Land—As against One Claiming by Adverse Possession—Remaindermen Can Not Postpone the Bar of the Statute, When—Original Will Lost—Certified Copy of Record of—Marginal Item Below Signature—Presumption—Will Invalid to Pass Title in Ohio.*

1. In Ohio *lex rei sitae* controls in the construction of a will executed in another state by a resident thereof devising lands in Ohio.

2. Where by a will executed in another state a testator devises land situated in Ohio to his daughter "during her natural life and at her decease to go to her lawful heirs," although under the rule prevailing in such other state such will would have conveyed a fee simple in accordance with the rule in Shelley's case, yet under the rule prevailing in Ohio, these words created only a life estate in such Ohio lands.

3. A will executed in Indiana by a resident of that state, devising lands in Ohio but not probated in Ohio for forty years after its execution, conveys no interest in said lands in favor of a remainderman as against the adverse claims of those who have held open and notorious possession for more than twenty-one years claiming title.

4. Such possession is adverse notwithstanding the fact that the warranty deed under which it was originally acquired from the devisee in said will recited the fact that the grantor held title by such devise. Such recital, while said will remains unprobated in Ohio, is not such notice to the one in possession as to prevent the statute of limitations from running in his favor.

5. A remainderman who has full knowledge of his rights as remainderman, or who ought to have had such knowledge, and who knows or ought to know that such rights depend upon an affirmative act on his part to be performed, can not, by standing by and refusing or failing to perform that act, postpone the time at

which the statute of limitations will commence to run against him.

6. When the original will is lost and a certified copy of the record of said will in a foreign jurisdiction is offered in evidence and it further appears that said original record contains a marginal item and that a part of said marginal item as recorded was below the signature of the testator, the presumption is that said record is a true copy and a true reproduction in form of the will as originally signed by said testator, and unless this presumption is overcome by evidence, such will is by reason of said marginal item, invalid in Ohio to pass title to property in Ohio.

HURIN, J.; NORRIS, J., and VOLLRATH, J., concur.

These actions were brought by Leslie M. Haines et al, one against defendant, Morris Hosler, and the other against Laura P. Barr, to recover possession of certain lands in Washington township, Hancock county, Ohio, which defendants and their grantors have held for about forty years past. As the two cases are identical in principal and are based upon the same state of facts, they will be considered together.

It appears by the evidence that one Joshua Kelly, late of Auburn, DeKalb county, Indiana, was in his lifetime seized in fee of the land in question, consisting of eighty acres, more or less, in Washington township, this county; that by his last will and testament said Joshua Kelly devised said lands to his daughter, Elizabeth Haines, in the following terms:

"8th. I give, bequeath and devise unto my daughter, Elizabeth Haines, of Iowa, eighty (80) acres of land situate in Hancock county, Ohio, for her during her natural life and to be held by her to her separate use and in no wise controlled by her husband, and at her decease to go to her lawful heirs by whomsoever begotten. I also give Elizabeth Haines the sum of two hundred dollars in money to be by her expended and laid out in improving said eighty acres of land, and to be used by no other person and for no other purpose whatever."

This item 8 was not written in the body of the will, but so far, at least, as the record shows (and the original will is lost) was written transversely along the left hand margin of the paper, a portion of such transverse writing being below the signature of the will.

It appears further in evidence that in Indiana the familiar rule in Shelley's case prevails, and that by this rule the estate so conveyed to Elizabeth Haines by this will would, if the land had been situated in Indiana, have been a fee simple. *Teal* v. *Richardson*, 66 N. E. Rep., 435.

In Ohio, the rule in Shelley's case no longer applies to wills, and the words used by the testator would, if the will were construed as an Ohio will, convey only a life interest to Elizabeth Haines, with remainder over to her heirs. See Section 5968, Revised Statutes.

It further appears that Joshua Kelly, the testator, died April 16, 1862, in DeKalb county, Indiana; that on or about June 16, 1863, said will was probated at Auburn, DeKalb county, Indiana, and was not probated or recorded in Ohio until March 21, 1902, about the time of the filing of the petitions in these actions, and lacking less than one month of forty years after the death of said testator.

On or about July 1, 1864, said Elizabeth Haines and Rudy Haines, her husband, deeded said eighty-acre tract to Thomas Kelly, of Indiana, by a warranty deed, which deed contained the following words:

"It being the premises held by grantor Elizabeth Haines in virtue of will of Joshua Kelly made on the 12th of April, 1862, and admitted to probate in the Court of Common Pleas of DeKalb County, Indiana, and recorded in Records of Wills, Volume 1, pages 112 and 113, said Joshua now being deceased in said DeKalb county, Indiana."

Thomas Kelly and wife by warranty deed dated March 28, 1866, conveyed this land to Peter Hosler, who held open, notorious and adverse possession until April 19, 1883, when he deeded fifty acres to Morris Hosler by warranty deed, for a consideration of $2,000.

At a subsequent date the remaining thirty acres were conveyed to Laura P. Barr by the executors of Peter Hosler; and said Morris Hosler and Laura P. Barr are now in possession, claiming title.

It further appears that said Elizabeth Haines died on March 7, 1883, leaving heirs of whom the plaintiffs are the survivors and representatives.

All of the children and heirs of Elizabeth Haines were of age at the time of her death except her daughter Edna, one of the plaintiffs here, and she became of age July 20, 1888, more than thirteen years before the commencement of these actions. Two of those heirs have since died (one in 1889 and the other in 1902) and each of these two is represented in this action by a daughter, one of whom is a minor.

On behalf of the plaintiff it is claimed:

1st. That the will of Joshua Kelly, though under Indiana law it would have conveyed to Elizabeth Haines a fee simple estate, yet, as it devised Ohio land to her, must be construed to convey only a *life* estate under the Ohio law; that therefore the warranty deed of Elizabeth Haines to Thomas Kelly could only convey her life estate, which has terminated by her death, and that her heirs, who inherited as remaindermen under the will of Joshua Kelly, are now the rightful owners of the land devised to her and her heirs.

2d. That, as the deed from Elizabeth Haines to Thomas Kelly expressly recited that the property conveyed was that held in virtue of the will of Joshua Kelly and admitted to probate in DeKalb county, Indiana, such recital was notice to Thomas Kelly and his grantees of the existence and contents of said will and that all subsequent purchasers being charged with notice of that will, can not be held to be innocent purchasers without notice but are bound by such notice.

3d. That as both the plaintiffs and defendants claim under the will of Joshua Kelly, their common source of title, the defendants could not be permitted to attack the probate of that will in Ohio as that would be in effect an attack on the common source of title, and that it follows that defendants are bound by this will, and that plaintiffs' title by virtue of it is absolutely established.

The defendants, on the other hand, deny these claims and assert that as to Ohio lands said will was void and powerless to pass title until probated in Ohio.

That said will not having been probated or recorded in Ohio prior to 1902 was of no effect and was void, because of the statute of limitations; that a void will is never notice of its contents for any purpose whatever; and that, therefore, the recital in the deed of Thomas Kelly was not notice to him or to his successors of the existence of the will; that consequently the grantees of Thomas Kelly are innocent purchasers without notice, and unaffected by said will.

These facts and claims present many nice questions of law, to only a few of which we can now refer.

As to the third and last claim of plaintiffs below, it is sufficient to say that, while it may be conceded that defendants are estopped from denying the title of the person from whom both claim as a common source of title, an attack on the probating of the will in Ohio is not an attack on the title of Joshua Kelly. It is an attack upon the title of plaintiffs perhaps— but the title of Joshua is conceded at all stages of this action.

As we understand the claims of defendants, they concede the title of Joshua Kelly, and the only question is as to what, if any, title was conveyed by Elizabeth Haines, who was, as plaintiffs claim, only a life tenant under the will of Joshua Kelly; or, as defendants claim, only one of the heirs of Joshua Kelly, the plaintiffs claiming not from her title, but from the title of Joshua; while the defendants claim solely through the title of Elizabeth, as one of the heirs of Joshua Kelly, repudiating any title by virtue of the will of Joshua Kelly. They never did claim under it as an *Ohio* will, therefore, they have a right to object to its being probated or set up as an *Ohio* will, as against them.

As to the first claim of the plaintiffs: While the authorities are somewhat conflicting in various states, we are of the opinion that the weight of authority is clearly in favor of *lex rei sitae* as controlling in the construction of a will as to real estate in Ohio.

It is conceded, however, that under the Indiana law, the will devised to Elizabeth Haines a fee simple estate under the rule in Shelley's case.

If, then, the will of Joshua Kelly could be regarded as an Indiana will for the purpose of conveying Ohio land as well as Indiana land, the title of defendants would be perfect, for Elizabeth Haines would, under the Indiana law, have taken a fee simple estate, and by her warranty deed she forever barred her heirs from claiming any interest through her.

It is conceded also on the other hand that, had the will been properly probated and recorded in Ohio before the rights of defendant became fixed, it would have operated to convey only a life estate to Elizabeth Haines, with remainder over to the heirs, who would have inherited as remaindermen immediately upon her decease. But it was not probated or recorded in Ohio for forty years. What effect did the delay have?

For forty years the will was treated by all parties as an Indiana will, conveying title to Ohio land as if it were Indiana land.

Under the Indiana rule, the fee vested in Elizabeth Haines immediately on the death of the testator. Therefore, there could be no remaindermen under the Indiana law, for there was no life estate to support a remainder.

Elizabeth Haines attempted to convey this fee to Thomas Kelly by warranty deed executed two years after the death of the testator. This deed undoubtedly did convey all of the title possessed by Elizabeth, whether a fee or a life estate. Her grantee and his successors have ever since held open, notorious, adverse possession.

But if this will conveyed only a life estate as to Ohio land to Elizabeth Haines, she had no power, by conveying her interest in that land, to destroy the rights of her heirs. The supposed fee of Elizabeth Haines and her grantees was subject at any time, unless prevented by the statute of limitations, to be divested of its character as a fee, and become merely a life estate, upon the probating of that will in Ohio (see *Carpenter* v. *Denoon*, 29 O. S., 379). That will could have been caused to be probated in Ohio by anyone interested. That will, construed under the Ohio law, as we think it must be construed if it is to convey Ohio lands, devised not only a life estate in Elizabeth

Haines, but a remainder in fee to her heirs. That remainder vested immediately upon the death of the testator. *Dennis* v. *Mullane,* 1 C. C., 399; affirmed by the Supreme Court without report, 20 B., 472.

At any time after his death, any of the remaindermen, even before the death of the life tenant, could have filed the will for probate and record, and so fixed their rights. Of the four heirs of Elizabeth who survived her, three were of age long prior to her death.

By the testimony of the only one of these three who still survives, it was common talk in the family that at the death of his mother, the children would inherit the Ohio lands through the will of their grandfather. The query arises, why did they not immediately take steps to investigate this claim and do the one thing needed to fix their title; that is, record the will in Ohio. This son Leslie was at the death of his mother in 1883, a man twenty-eight or twenty-nine years of age. His sister Sara was twenty-six or twenty-seven years old. His sister Mary was thirty-one years old.

By Leslie's testimony, it is evident that all the heirs knew all that he knew. He said that he did investigate; that is, he went to Auburn, and employed a lawyer to look at the will and was misinformed by the lawyer as to its contents; was informed that it did not mention the heirs and so he dropped the investigation.

The will was a matter of public record, why did he not read it himself? If his hired agent misinformed him as to the contents and he trusted his agent and stopped his investigation, must other's rights suffer and can he be excused for his own negligence?

But it is claimed that this makes no difference because the statute of limitations could not begin to run against the heirs until the death of their mother Elizabeth; that their estate in remainder then took effect; that consequently the twenty-one years allowed by the statute had not run against these heirs when the petition was filed.

But suppose this will had never been probated or recorded in Ohio, there would never then have been any estate in re-

mainder. A will speaks from the death of the testator; the estate in remainder vested, if at all, at the death of the testator. The remaindermen, as we have seen, had the right at any time after the death of the testator, to cause this will to be probated in Ohio. They were charged with notice and actually had notice that others were claiming adversely to them through the deed of their mother. They knew, or ought to have known that until the will was so probated in Ohio, they had no rights enforceable in law or equity. Could they stand idly by and presuming on the questionable fact as to their being saved by a statute of limitations, wait until the near approach of the final moment of their possible claim, until twenty-five or thirty years after they had knowledge of their rights, and until forty years after their opponents rights had accrued, and then for the first time take the preliminary step which they had the right to take thirty years before, but had neglected to take during all those years?

Such a course involved great risk. Was it fatal?

There can be no doubt, we think, that the right of action of the remaindermen, if they were remaindermen under the will, did not accrue until the death of the life tenant, Elizabeth Haines, March 7, 1883. Had the will been probated in Ohio they might, as remaindermen, have brought suit to enjoin waste of the estate, for their estate in remainder had vested on the death of the testator. But their right to sue for possession did not accrue until they were entitled to possession upon the taking effect of their estate in remainder, at the death of the life tenant. But this right to sue as remaindermen was contingent not only upon the death of the life tenant, but upon the probating of the will in Ohio, for until such probate was made, the will was not a will at all as to Ohio lands—there was no estate in remainder. The right to probate that will and the power to do so existed in those heirs, as we have seen, long before the death of the life tenant—in fact, from the death of the testator. If they failed to probate this will and to fix their right, they can not now take advantage of their own neglect. They could not by such neglect postpone the time at which the statute of limitations began to run. It began to run

against them and in favor of those holding adverse possession from the time of the vesting of their estate in remainder—*i. e.*, at the death of the testator, subject only to their rights as minors. The statutory time for the protection of their rights as minors has long since passed as to all of the heirs living at the time of the death of the life tenant. The statute having commenced to run as to these heirs, of course has continued to run as to their children and heirs, which includes all of the plaintiffs in this case. See *Williams* v. *Presbyterian Society*, 1 O. S., 478.

Having slept on their rights, rights of which their own testimony proves them to have had full knowledge, they are now estopped from claiming these rights as against those claiming title and holding adverse possession for more than twenty-one years.

Whether, therefore, the will be construed as an Indiana will or as an Ohio will the claim of plaintiff under the will is barred.

But what is the will on which they base their rights?

To convey to them any title it must be a will enforceable under the Ohio law. Is this such a will?

As stated in the outset, this clause under which plaintiff's claim was apparently written in the margin of the will, not in the body of it. Photographs of the record of the will in De-Kalb county, Indiana, were offered in evidence and disclose the appearance of the will as recorded.

The original will may or may not have been written in the exact form in which it was copied into the record. The presumption is that the record is a true record. It is offered by the plaintiffs to sustain their claim. They are bound by it.

A part of this marginal will as far as the record shows, and that is the only evidence we have to guide us, was written below the signature of the will.

The Ohio law, Section 5116, requires that every last will and testament shall be signed at the end thereof by the party making the same.

Our Supreme Court in the recent case of *Irwin* v. *Jacques*, 71 O. S., 395, held that a will containing such marginal matter, a part of which was below the signature, was not signed at the end thereof. True in that case the marginal portion

was not numbered so as to show just where it was to be inserted, as was done in the case at bar, but on the other hand, the proof was positive that the marginal portion had been written at the request of the testator and before he signed the will, making a case much stronger for claimants than the case at bar.

In the case at bar, there was no such proof. The original will was not produced. The proof shows that the marginal portion was not only extended below the signature but that it was recorded in a different handwriting from that of the body of the will. The evidence is conflicting as to who was the real writer of the different portions of the record, but the apparent preponderence of testimony is that the marginal portion was not written by the officer having at the time authority so to do, nor by his deputy.

. The proof as to this is not, I say, convincing, but under the decision of *Irwin* v. *Jacques* it seems clear to us that this will can not be held to be a valid will under the laws of Ohio, unless we can give to the record of the will a different interpretation and greater validity than we could have given to the original will if produced. We know of no rule of law justifying such a course.

How then does it affect the case? The plaintiff's rights depend entirely on the Ohio probate or record of an Indiana will. The will gives plaintiffs no rights as an Indiana will, but we are asked to enforce it as an Ohio will.

Under the Indiana law, it conveyed a fee simple estate, and the grantee of that fee simple estate attempted to convey the fee which she presumably supposed that she had a right to convey, and which the testator, having his will drawn, and skillfully drawn, under the laws of Indiana, with which alone he and his scrivener were presumably familiar, evidently intended to give her the right to convey.

We are asked to decree that this will is of no validity as an Indiana will, so as to declare the will void so far ts it purports to convey a fee, but to declare it valid as an Ohio will, so as to recreate a life estate under which plaintiff can claim. Before

we can do this, it must first be necessary to produce a will which, if made in Ohio, would satisfy the laws of Ohio.

This, we think, has not been done. But this conclusion is not essential to the decision of this case. Whether this will was originally properly executed or not, the statute of limitations has completely barred plaintiffs' claim.

If these conclusions are correct, it follows that the will is now void as an Ohio will, and that as to the eighty acres in Ohio, Joshua Kelly died intestate. His estate in these eighty acres then descended to his heirs generally. The record discloses that there were at least seven of his heirs mentioned in his will. One of these, Elizabeth, conveyed her interest, whatver it was, by her warranty deed.

The plaintiffs, as heirs of Joshua Kelly, are, in the absence of a will, heirs only to the portion of their mother, Elizabeth, and her interest is lost to them by her warranty deed as well as by the statute of limitations. The remaining six heirs of Joshua Kelly have made no claim and their rights are now barred by the statute of limitations.

The question of notice raised by the recitals of the deed from Elizabeth Haines to Thomas Kelly becomes immaterial in view of the conclusions we have reached. It follows that the court below erred in directing a verdict for the plaintiff, that the verdict was against the weight of the evidence and should have been for defendant.

The judgment of the court below will, therefore, be reversed, and this court proceeding upon the undisputed facts to render the judgment which ought to have been rendered by the court of common pleas, the petition of the plaintiffs, Leslie M. Haines et al, is dismissed at plaintiffs' costs, and the title of defendants, Morris Hosler and Laura P. Barr, to the real estate described in the petition will be quieted as against plaintiffs. Judgment against plaintiffs, Leslie M. Haines et al, for costs, for which execution is awarded and cause remanded for execution.